## IN THE MATTER OF RAY BAILEY, Alias RAY KEITH.

(Filed 26 October, 1932.)

1. **Extradition B c—Upon hearing of habeas corpus in extradition proceedings court must hear allegations and proof on controverted facts.**

   Where a writ of *habeas corpus* has been issued in extradition proceedings it is the statutory duty of the court, if an issue is raised concerning material facts, to "proceed in a summary way to hear the allegations and proof of both sides," and the words of the statute import more than a mere perfunctory or formal hearing. C. S., 2234.

2. **Same—Court may determine whether prisoner was in demanding state at time of crime upon issue of whether he is a fugitive from justice.**

   Upon the hearing of a writ of *habeas corpus* in extradition proceedings the hearing judge may determine from the evidence, when the fact is controverted, whether the prisoner was in the demanding state at the time of the commission of the crime upon the question of whether he is a fugitive from justice.

3. **Same—Appeal and Error J c—Judge hearing habeas corpus in extradition proceedings must determine disputed facts in his discretion.**

   Where upon a hearing of a writ of *habeas corpus* in extradition proceedings it is controverted as to whether the prisoner was in the demanding state at the time of the commission of the crime an issue of fact is raised for the determination of the hearing judge in his sound discretion, and his finding upon supporting evidence that the prisoner was not a fugitive from justice is conclusive on appeal.

4. **Extradition B a—Upon finding that prisoner was not a fugitive from justice judgment releasing prisoner is correct.**

   Where on a hearing of a writ of *habeas corpus* in extradition proceedings the court finds upon supporting evidence that the prisoner was not a fugitive from justice and was not in the demanding state at the time of the commission of the crime, and releases the prisoner, the judgment speaks the mind of the judge, and is not affected by certain remarks of the judge in the record outside the judgment indicating that he decided the case from the standpoint of the guilt or innocence of the prisoner, and the judgment will be affirmed.

---

IN RE BAILEY.

---

HABEAS CORPUS, before *Moore, J.,* 27 June, 1932. From JACKSON.

On 5 May, 1932, a warrant was issued by a magistrate of Greenville County, South Carolina, charging that on 1 May, 1932, Ray Bailey, alias Ray Keith, "did shoot, kill and murder one A. B. Hunt" in the town of Greenville, South Carolina. The Governor of South Carolina duly made requisition upon the Governor of North Carolina, and on 9 May, 1932, the Governor of North Carolina duly issued a warrant of extradition, requiring the arrest of said Bailey. Bailey was arrested on 7 June, by the sheriff of Jackson County, and thereupon applied for a writ of *habeas corpus.* The writ was issued by Moore, J., on 7 June, and was heard by him on 27 June, 1932. At the hearing it appeared that Hunt had been killed in Greenville, South Carolina, at about 10:30 p.m. on the night of 1 May. A police officer of Greenville, South Carolina, who claimed to be present at the killing testified positively to the identification of Bailey, and further testified that, in the gun battle between Bailey and police officers, resulting in the death of Hunt, Bailey had been shot by police officers and seriously wounded in the hand and abdomen. Another police officer of Greenville, South Carolina, who claimed to be present at the shooting also positively identified Bailey as the man who killed Hunt. A merchant of Greenville, South Carolina, also identified Bailey as the slayer of Hunt.

Bailey offered evidence of many witnesses as to his whereabouts on the day of the killing, and further offered positive evidence from several disinterested witnesses that he was found shot down on the road between Burnsville and Asheville at about 10:30 o'clock on the night of 1 May. The place, where the testimony showed that he was found lying in the road seriously wounded, was approximately eighty-five miles from Greenville, South Carolina. The evidence for Bailey further tended to show that the persons who found him lying in the road seriously wounded, carried him to Asheville and from thence he was then carried to a hospital at Sylva in Jackson County. Bailey testified that he had been shot by a companion on the night of 1 May, resulting from a quarrel over a poker game, and offered testimony of disinterested witnesses tending to corroborate his statement. Bailey denied that he was in South Carolina on the day of the crime or that he had been in the state for sometime prior thereto, and contended that he was charged with the crime merely because he had been found in a hospital seriously wounded early the next morning. There was further evidence to the effect that police officers of South Carolina had arrested other members of the Bailey family, charging them with the murder of Hunt, and positively identifying them as present at the killing, and that failing to offer at the hearing evidence of identity, they had all been discharged under writ of *habeas corpus.*

Bailey offered the evidence and affidavits of approximately twenty witnesses, and the State offered affidavits and testimony of twelve witnesses.

At the conclusion of the hearing the record shows the following: (By the Court.) "Gentlemen, I think there has been an issue raised here, I don't think I have a right to pass on, that of identity, and at the same time I don't think it would be fair to the defendant to send him to South Carolina to stand a trial, as it would be very expensive to him and his folks; under the testimony I don't think there would be a jury anywhere that would ever find him guilty beyond a reasonable doubt. I shall, therefore, discharge him under the writ and let him go.

The respondents except to the rulings of the court and hereby give notice in open court of intention to appeal to the Supreme Court, and also give notice in open court that respondents will make application to the Supreme Court for a writ of *certiorari* for the purpose of reviewing the record and rulings and findings of the court."

Thereafter a formal judgment was entered as follows:

"This cause coming on to be heard and the same being heard before the undersigned judge, resident of the 20th Judicial District of North Carolina, at Sylva, N. C., on 27 June, 1932, upon the petition and writ of *habeas corpus* in this cause, and it appearing to the court that a fugitive warrant was issued for Ray Bailey, alias Ray Keith, and that thereafter the Governor of North Carolina, upon request of the State of South Carolina, issued warrant of extradition for Ray Bailey, alias Ray Keith, and thereafter petition for writ of *habeas corpus* was sworn out by the said Ray Bailey, and writ of *habeas corpus* was thereupon issued, and the State of South Carolina appearing in court and being represented by Hon. J. G. Leatherwood, John M. Queen, solicitor of the 20th Judicial District, and D. D. Alley; and the State of South Carolina having introduced its evidence, and the defendant, Ray Bailey, having introduced evidence, all of which appears in the record;

Thereupon, the court finds as a fact:

1. That Ray Bailey (alias Ray Keith) is a citizen and resident of the State of North Carolina.

2. That he is not a fugitive from justice from the State of South Carolina, and was not present at the time of the commission of the alleged crime at Greenville, South Carolina.

3. That the State of South Carolina has failed to show probable cause for holding the said Ray Bailey in custody, or that he committed the alleged crime—the murder of A. B. Hunt, and has failed to produce sufficient evidence to warrant the court in refusing the writ, and the court finding from all the evidence introduced in this cause that the

petitioner is entitled to the relief sought in his petition and the writ of *habeas corpus;*

It is, therefore, upon motion of Clyde R. Hoey, G. D. Bailey, Dan K. Moore and Charles Hutchins, attorneys for the petitioner, considered, ordered, decreed and adjudged by the court that the petition and writ be allowed and that the defendant be and he is hereby released from custody."

A petition was filed in the Supreme Court of North Carolina for a writ of *certiorari* to bring up the record, which was duly granted on 31 August, 1932, and the record was duly certified by Judge Moore on 13 September, 1932.

*John M. Daniel, Attorney-General of South Carolina, Cordie Page, Assistant Attorney-General of South Carolina, J. G. Leatherwood and Queen & Alley for demanding State.*

*Clyde R. Hoey, G. D. Bailey, Dan K. Moore and Charles Hutchins for petitioner.*

BROGDEN, J. When a writ of *habeas corpus* has been issued to inquire into the legality of an arrest on a warrant of extradition, what is the function of the hearing judge and the legal effect of his findings of fact?

C. S., 2234, defines the duty of the judge before whom the writ is returnable, and also, prescribes the scope of the hearing. He shall immediately (a) "examine into the facts contained in such return and into the cause of the confinement;

(b) "and if issue be taken upon the material facts, . . . or other facts are alleged to show that the imprisonment . . . is illegal";

(c) "the . . . judge shall proceed in a summary way to hear the allegations and proofs on both sides;

(d) "and . . . do what to justice appertains, in delivering, bailing or remanding such party."

The statutory words "if issue be taken upon the material facts . . . the judge shall proceed in a summary way to hear the allegations and proofs of both sides," preclude the idea that such hearing shall be perfunctory and merely formal. This Court said *In re Veasey,* 196 N. C., 662, 146 S. E., 599: "One who is sought to be extradicted may contest the validity of the extradition proceedings on writ of *habeas corpus* by showing (1) that he is not charged with a crime in the demanding state, or (2) that he is not a fugitive from the justice of the demanding state. Both of these are jurisdictional matters, and, if the accused can establish either, he is entitled to be discharged from custody. The first

is a question of law to be determined upon the face of the requisition and the indictment or affidavit accompanying it, the law of the demanding state, of course, furnishing the test; while the second is a question of fact which, when controverted, may be established by evidence like any other disputed fact." See, also, *In re Hubbard,* 201 N. C., 472. All the authorities, including the decisions of this State are to the effect that it is not proper to hear evidence upon the guilt or innocence of the prisoner or to take into consideration the merits of the case or of the defense to be interposed at the trial or of an alibi, or of other matters involving the ultimate issue of guilt. Nevertheless, these are general observations and legal assertions. If the petitioner was not in the demanding state when the crime was committed, certainly he could not be guilty of a crime, and hence it is obvious that the question of presence in the demanding state at the time of the crime involves in a certain sense guilt or innocence, alibi or other defenses that may be interposed at the trial. It is apprehended, however, that the courts mean to say that the bald question of presence in the demanding state at the time of the commission of the alleged crime was the primary question to be considered.

In arriving at a conclusion as to whether the prisoner should be remanded or discharged, a difficult question stands at the threshold: What quantum of proof shall the hearing judge require in order to determine the ultimate issue of fact as to whether the prisoner was in the demanding state at the time of the crime? It has been asserted that if the evidence is conflicting upon the subject of presence in the demanding state at the time the crime was committed that the prisoner is not entitled to be discharged, but should be remanded for trial. It has also been said that if there is some evidence of the presence of the prisoner in the demanding state at the time the offense was committed, a discharge is not warranted or justified. See *Munsey v. Clough,* 196 U. S., 364, 49 L. Ed., 515; *Hyatt v. New York,* 188 U. S., 691, 47 L. Ed., 657. That is to say, that if there is more than a scintilla of evidence in favor of the demanding state, the judge should discharge the writ of *habeas corpus* and remand the prisoner. Hence, if any sort of reckless or fanciful testimony should be offered tending to show the presence of a prisoner in the demanding state, the accused might thereupon offer the testimony of a thousand disinterested persons who knew absolutely that he was not in the demanding state at the time, nevertheless the courts would be powerless to afford protection. Manifestly under such interpretation the beneficent powers of *habeas corpus* would be set at naught and the "hearing" provided by law would be no more than a hollow form or fleeting shadow. Nevertheless the demanding state is vitally interested in

the outcome. It has the right to try and punish offenders against its peace and dignity, committed within its jurisdiction. Consequently a difficult task is imposed upon a judge in undertaking to decide the important question involved.

The statute of this State, C. S., 2234, enjoins the judge "to do what to justice appertains in delivering, bailing or remanding such party." Obviously the statute does not undertake to limit the judge in arriving at his conclusions, but apparently commits the result to the exercise of his sound legal discretion. The nearest approach to a positive declaration of this Court upon the quantum of proof is contained in *S. v. Herndon,* 107 N. C., 934, 12 S. E., 268. Upon the facts appearing in the record, the Court said: "If the judge, upon the investigation of the evidence on a petition for *habeas corpus,* adjudges that there is or is not probable cause, and admits or refuses to admit to bail, no appeal or *certiorari* lies, either in favor of the state or the petitioner. . . . The quantum of evidence and the number of witnesses to be examined must necessarily be left also to the sound discretion of the judge who hears the writ, and his action in that regard cannot be reviewed."

In the case at bar a controversy of fact arose between the contending parties, that is the demanding state and the prisoner, as to whether the prisoner was in the demanding state at the time the alleged offense was committed. The writ of *habeas corpus* was created and fashioned for the express purpose of determining such controverted fact. The statute and public policy require that such fact be determined in a summary manner. Doubtless in given cases different minds would work out diverse conclusions, but after all it is perhaps wise that the determination of the ultimate fact should be lodged in the sound legal discretion of an impartial judge, commissioned by the law of the land and the inherent sense of the responsibility of his high office "to do what to justice appertains." He hears the witnesses and observes their mental leanings or bias toward the question involved. He senses the atmosphere of the case. Moreover it would doubtless be a dangerous experiment to undertake by a judicial decree of an appellate court to prescribe a legal straitjacket for such matters.

Exercising the power delegated by statute and supported in principle by the decisions of this State, the hearing judge found certain facts and set them forth in his judgment. The last inquiry in the solution of the appeal is: What is the effect of the findings of fact set out in the judgment? Whatever may be the variable conclusions reached by other courts, that inquiry is settled in North Carolina. The law is thus stated: "The findings of fact made by the judge of the Superior Court, found as they are upon competent evidence, are also conclusive on us,

and we must therefore base our judgment upon his findings, which amply sustain his order." *In re Hamilton,* 182 N. C., 44, 108 S. E., 385. See, also, *Clegg v. Clegg,* 186 N. C., 28, 118 S. E., 824; *In re Hayes,* 200 N. C., 133, 156 S. E., 791.

It is true that the judge made certain remarks appearing in the record, tending to show that he was undertaking to view the case from the standpoint of guilt or innocence or the ultimate probability of acquittal upon trial in the demanding state. If these remarks had been incorporated into the judgment itself, a wholly different factual situation would be presented upon the appeal, but the judge expressly declared in the judgment as signed that he found as a fact "that he (prisoner) is not a fugitive from justice from the State of South Carolina, and was not present at the time of the commission of the alleged crime at Greenville, South Carolina." The judgment as written and signed speaks the mind of the judge and his conclusion upon the matters in issue. Therefore, the judgment as rendered must stand.

Affirmed.