18420

Ray S. BAILEY, Respondent, v. Ellis MacDOUGALL, Director of
the Department of Corrections for The State of South
Carolina, Appellant

(145 S. E. (2d) 425)

*Messrs. Daniel R. McLeod,* Attorney General, and *Edward B. Latimer,* Assistant Attorney General, of Columbia, and *B. O. Thomason, Jr.,* Solicitor, of Greenville, *for Appellant,*

*Mrs. Betty McBride Sloan,* of Columbia, *for Respondent,*

4

November 10, 1965.

Moss, Justice.

This record shows that on May 1, 1932, A. B. Hunt, a police officer of the City of Greenville, South Carolina, was shot and killed on a well lighted street in said city while he was attempting to prevent a robbery. Thereafter, on May 5, 1932, a warrant was issued by a Magistrate of Greenville County charging Ray Bailey, the respondent herein, with the murder of said Hunt. The Governer of South Carolina duly made requisition upon the Governor of North Carolina and, on May 9, 1932, the Governor of North Carolina duly issued a warrant of extradition requiring the arrest of Bailey. He was arrested on June 7, 1932, and thereafter applied to the Superior Court of Jackson County, North Carolina, for a Writ of *Habeas Corpus* alleging the illegality of custody in that he was charged with the murder of A. B. Hunt on May 1, 1932, when, at which time he was in the State of North Carolina and was not in the State of South Carolina. A return to the writ was duly made asserting that Bailey was lawfully in custody upon the aforesaid warrant. The case came on to be heard before a Judge of the Superior Court of North Carolina and, after hearing numerous witnesses and receiving a number of affidavits, the trial judge found that Bailey was not a fugitive from justice from the State of South Carolina and was not present at the time of the commission of the alleged crime at Greenville, South Carolina, and directed his release from custody. From the aforesaid judgment, an appeal was taken on behalf of the State of South Carolina to the Supreme Court of North Carolina and a writ of certiorari issued to bring up the record. The judg-

ment of the lower Court was affirmed. *Ex Parte Bailey,* 203 N. C. 362, 166 S. E. 165.

The State of South Carolina applied to and was granted by the Supreme Court of the United States a writ of certiorari to review the judgment of the Supreme Court of North Carolina, which affirmed the judgment of the Superior Court of Jackson County, North Carolina. The United States Supreme Court reversed the judgment of the Supreme Court of North Carolina which had affirmed the lower Court, holding that one whose extradition is sought cannot be released from custody on *habeas corpus* unless his absence from the demanding State, when the alleged offense was committed, is established beyond reasonable doubt; and this requirement is not met where there is merely a conflict of evidence. The cause was remanded to the Supreme Court of North Carolina for further proceedings. *State of South Carolina v. Bailey,* 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292.

Thereafter, in 1935, Bailey was arrested in Gainesville, Georgia, and brought to Greenville, South Carolina, for trial upon an indictment charging him with the murder of A. B. Hunt; the said indictment having been returned by the Grand Jury of Greenville County on August 25, 1932.

The record shows that Bailey employed an outstanding, capable and experienced lawyer of the Greenville Bar to represent him. This attorney is of the highest integrity and honesty and always gives a client his complete loyalty and serves him in good faith to the best of his ability.

The case against the respondent was called for trial in the General Sessions Court for Greenville County on January 13, 1936. Upon his arraignment, the respondent entered a plea of not guilty. Thereafter, the Solicitor and the retained counsel of the respondent entered into negotiations concerning a possible guilty plea. Pursuant thereto it was agreed that the respondent would withdraw his plea of not guilty and enter a plea of guilty of murder with recommendation to the mercy of the Court. A jury was impaneled and the

agreement which had been reached was carried into effect by the verdict of said jury. The respondent was sentenced to imprisonment in the State Penitentiary for the term of his whole lifetime.

It appears from the record that during the negotiations concerning a possible guilty plea that the Solicitor and the Chief of Police of the City of Greenville signed a statement, dated January 13, 1936, and such was delivered to counsel for the respondent, reading as follows:

"This will confirm our conversation that in the event that Ray Bailey enters a plea of guilty with recommendation to mercy in the case now pending against him in the General Sessions Court for Greenville County, that I will, knowing the facts of the case and the circumstances surrounding same, after the said Ray Bailey has served for a period not exceeding ten years, recommend to the Board of Pardons or Governor a pardon or parole."

The respondent with the aid of retained counsel, other than his original counsel, on May 4, 1964, petitioned the Court of Common Pleas for Richland County for a writ of *habeas corpus,* alleging that his detention and restraint under the aforesaid sentence was unlawful and in violation of his constitutional rights under both the State and Federal Constitutions, asserting (a) denial of due process of law; (b) that his guilty plea was induced by the written promise and agreement hereinbefore set forth, that if he would pead guilty he would only serve ten years and possibly less, and would be aided in securing a parole; (c) that being only twenty-five years of age, with no previous record and no experience with the law, signed the agreement believing and being led to believe that the State was bound by the aforesaid agreement; and (d) that the voluntary nature of his guilty plea was destroyed by the acts herein recited, thereby depriving him of his rights guaranteed by Art. I, Sec. 5 and Sec. 18 of the 1895 Constitution of this State, and of the Fifth and Fourteenth Amendments to the Constitution of the United

States. The State, by way of return to the aforesaid petition, alleged that the respondent was confined in the South Carolina State Penitentiary pursuant to a sentence of life imprisonment imposed upon him on January 13, 1936, in the Court of General Sessions for Greenville County, South Carolina, which followed a plea of guilty to the charge of murder with recommendation to the mercy of the Court. The other allegations of the petition were denied.

A full hearing on the issue made by the respondent's petition and the return of the State was had before the Honorable John Grimball, Resident Judge of the Fifth Judicial Circuit. Thereafter, by order of July 29, 1964, Judge Grimball set aside the guilty plea and the sentence imposed pursuant thereto on the grounds that the respondent's guilty plea was induced by the agreement heretofore set out, that he understood that he would only serve ten years and possibly less, that the Solicitor would aid in his parole, that he was led to believe that the State was bound by the Solicitor's actions, and that these acts destroyed the voluntary nature of the guilty plea. The trial Judge further held that the respondent was not entitled to his absolute release and remanded this case to the General Sessions Court for a new trial. He permitted the respondent to be released from custody provided he posted a bond in the amount of Ten Thousand Dollars, to be approved by the Clerk of the Court of Greenville County. The State has appealed from the aforesaid order.

The issue here is whether the agreement by the Solicitor and the Chief of Police to recommend to the Board of Pardons or Governor a pardon or parole after the respondent had served for a period of not exceeding ten years destroyed the voluntary nature of his guilty plea.

The person seeking relief by writ of *habeas corpus* has the burden of sustaining the allegations of his petition by a preponderance of the evidence. *Shelton v. State,* 239 S. C. 535, 123 S. E. (2d) 867; *Moore v. State,* 241 S. C. 279, 128 S. E. (2d) 109.

The respondent testified that he was not guilty of the crime charged against him in the indictment and that he wasn't in Greenville, South Carolina, at the time the alleged crime was committed. The question of the guilt or innocence of the respondent is not an issue in a *habeas corpus* proceeding. *Medlock v. Spearman,* 185 S. C. 296, 194 S. E. 21; *Wyatt v. State,* 243 S. C. 197, 201, 133 S. E. (2d) 120, and *Tillman v. State,* 244 S. C. 259, 136 S. E. (2d) 300. Likewise, *habeas corpus* is not the proper proceeding to try the question of alibi. 39 C. J. S. Habeas Corpus § 22, page 473.

A plea of guilty is a confession of guilt made in a formal manner and is equivalent to and as binding as a conviction after a trial on the merits. It has the same effect in law as a verdict of guilty and authorizes the imposition of the punishment prescribed by law. A plea of guilty must be freely and understandingly made. A plea of guilty, if induced by promises which deprive it of the character of a voluntary act, is void and should be set aside.

We come now to consider whether the respondent voluntarily and understandingly entered a plea of guilty of murder with a recommendation to the mercy of the Court or whether his plea was induced by promises which destroyed the voluntary character of such.

It is admitted that the respondent never had any conversation with the Solicitor or any law enforcement officer concerning the entry of his plea. According to the record before us, the only persons who discussed this matter with the respondent were his brother, C. M. Bailey, and his employed attorney. This attorney was called by the respondent as a witness. He testified that he was employed by C. M. Bailey, a brother, to represent the respondent. This attorney testified that in the preparation of the defense of the respondent, he reviewed all of the circumstances in the case as best as he knew how and realized that under the facts it would be very difficult to defend the case successfully. The record

is not entirely clear as to whether counsel for the respondent or the Solicitor initiated negotiations looking toward the taking of a plea. He says that he endeavored to procure from the Solicitor and the Chief of Police an agreement to accept a plea of guilty to a charge of manslaughter rather than murder, in which effort he was unsuccessful. He said the Solicitor finally agreed that if the respondent would enter a plea of guilty of murder with a recommendation to mercy that he and the Chief of Police would recommend a pardon or parole after the respondent had served ten years. This attorney then testified as follows:

"After they agreed that they would make that recommendation, I talked to Mr. Bailey's brother, and I went down to the jail and talked to Mr. Bailey and his brother together, and I told them just exactly what the proposition was and what the circumstances were, and we discussed the case as a lawyer does with his client. Mr. Bailey had never admitted, and has not to this day, to me admitted directly that he was there or that he killed the officer. But I remember stating to Mr. Bailey and his brother the proposition that was to be considered, and I said, 'Mr. Bailey, if you were not there and did not participate in that shooting, I would advise you under no circumstances to enter any plea of guilty of any kind'—I said, 'You are the only person who knows whether you were there or not', and I said, 'You and your brother can discuss this matter and come to a conclusion about it. If you were there and participated in it, you can consider whether or not you would agree to this plea.'"

We quote further from this attorney's testimony:

"* * * Of course, we discussed the evidence that was against him, and at any rate, I told him to consider this matter, and I also told Mr. Bailey and his brother that this recommendation did not mean that the Governor would have to grant the parole or the pardon, but I did state to him that, ordinarily, the Governor would give great weight to the recommendation of the prosecuting officer and to the Chief of Police in this case. So, after discussing it with them,

I left and told them to talk about it and let me know the next day their conclusion. So I went back down to the jail, according to my recollection, and Mr. Bailey and his brother, Mr. C. M. Bailey—I think that was his name—said they thought they would agree to enter the plea. Out of an abundance of precaution, I went back to the Solicitor, your Honor, and the Chief Of Police, and told them that they would have to put that agreement in writing; that it was a very serious matter; and that, if they would write me a letter stating that they would recommend a parole or pardon of Mr. Bailey after he had served a term of ten years or before—I forget just how it was, but you have the letter before you—that he would enter the plea. So the plea was entered under those circumstances. The letter was signed and I took it down to Mr. Bailey and let him read it, or read it to him. At least, I showed them the letter and had the agreement confirmed in that way."

This attorney was further asked by the present attorney for the respondent whether or not he felt that "this agreement itself was tantamount to the promise that this man would serve only ten years." The answer to this question was:

"Well, no, ma'am, I couldn't answer that affirmatively, because I told Mr. Bailey at the time that this letter did not mean that the Governor would have to grant the parole or the pardon, but I did tell him that the recommendation of those two officers, ordinarily, would have great weight with the Governor or anyone who passed upon that question."

This witness was asked on cross examination as to the legality of the agreement made by the Solicitor and the Chief of Police. His answer was:

"* * * the legality of this agreement is not in question. The agreement was that these two officers would recommend a parole or a pardon for this boy after service of ten years, and I don't know what you mean by 'legality', but that was an agreement between the two officers and the prisoner that they would do that. Now, they carried that out. They recommended that he be paroled or pardoned. They

carried out the agreement. Now, as to the legality of it, I don't understand what you mean."

We quote further from the testimony of this witness:

"Q. Well, to clarify that, there was actually no coercion exerted on the part of the Solicitor against Ray Bailey, was there?

"A. Not a bit that I know of.

"Q. And any recommendations or conversations that were had concerning this agreement were made by you to Mr. Bailey, were they not?

"A. That's right.

"Q. The conversations were between you and Ray Bailey and his brother, C. M. Bailey?

"A. That's my recollection.

"Q. And the final agreement to take, or to agree to this plea of guilty of murder with recommendation to the mercy of the Court, was Ray Bailey's decision and Ray Bailey's alone, was it not?

"A. Yes, sir. He made the decision and instructed me what to do."

This witness, in several other places in his testimony, said there was no coercion or intimidaton on his part to convince the respondent that he should make this guilty plea. He further said that he explained to the respondent that the agreement made by the Solicitor and the Chief of Police would only be a recommendation to the Governor and that it would be up to the Governor as to whether or not he would accept this recommendation and act on it; that he would not be bound to do so.

The Solicitor, who prosecuted this case in behalf of the State, was called as a witness by the respondent. He testified that it was his recollection that he approached counsel for the respondent with a view to having the respondent enter a plea of guilty in this case. He said that after negotiations that the respondent's attorney came back to him and said he wouldn't permit the respondent to plead unless the Solicitor and Chief of Police would sign a letter that after the

service of not more than ten years that "we would recommend that he be paroled or pardoned." The Solicitor said it was finally agreed that respondent would enter a plea of guilty with recommendation of mercy with the consent and approval of the State, and he confirms the signing by him and the Chief of Police of the letter hereinbefore quoted, that they would recommend to the Board of Pardons or Governor a pardon or parole after the respondent had served for a period not exceeding ten years. He further testified that when the respondent made application for a pardon or parole that he and the Chief of Police recommended that such be granted. The Solicitor testified that he never talked to the respondent or with any member of his family. He said that the only negotiations that he had in connection with this case were through the employed attorney of the respondent.

. Ray Bailey testified in his own behalf and admitted that he escaped from custody in 1950 and went to North Carolina and voluntarily surrendered within a few days thereafter and was returned to prison. He testified that he again escaped in 1957 and was at large for approximately seven years when he was recaptured in the State of Montana and returned to prison.

.. The respondent testified that he agreed to take a life sentence with the understanding that he would get out in ten years or less. He said "That's the way it was explained to me." Upon cross examination, when asked if his attorney did not come to the Greenville County Jail with his brother and "told you that he had worked out a proposition concerning a consent verdict," his answer was that he didn't remember what his lawyer said but "I remember he said he had it fixed for me to take a life sentence. That's all I remember." When asked if the Solicitor or any of his assistants, ever in any way tried to coerce him into entering a plea of guilty or a consent verdict, said "I don't remember talking to them, so they couldn't." He admitted that he had seen a copy of the letter which the Solicitor and the Chief of Police signed stating that they would agree to recommend

either a parole or a pardon after he had served a maximum sentence of ten years. He admitted that the Solicitor and the Chief of Police "kept their word" and recommended a pardon or parole for him after he had served ten years. When pressed for an answer as to who told him that if he would take a life sentence that he would get out in ten years or less, he said that his brother, C. M. Bailey, was the one who made this representation to him.

The respondent called as his witness the Director of the South Carolina Pardon and Parole Board. This witness testified that the application of the respondent for a parole came before his Board. In passing upon such application, the Board considered the recommendation of the Solicitor and the Chief of Police who had on several occasions recommended the respondent for parole. This witness further testified that the prison record and his escapes hurt the respondent more than anything else.

It has been held that allegations in a petition for a writ of *habeas corpus* that the petitioner is held without due process of law must be specific in statement of facts supporting the legal conclusion. *Kohl v. Lehlback,* 160 U. S. 293, 16 S. Ct. 304, 40 L. Ed. 432; *Whitten v. Tomlinson,* 160 U. S. 231, 16 S. Ct. 297, 40 L. Ed. 406, and *Ex Parte Anderson,* 191 Or. 409, 229 P. (2d) 633, 230 P. (2d) 770, 29 A. L. R. (2d) 1051.

A *habeas corpus* case is tried and determined on the issues framed by the pleadings. The proof must correspond with, and be confined to, the issues raised by the pleadings. A material variance between the pleadings and the proof is fatal. 39 C. J. S. *Habeas Corpus* §§ 97 (a) and (b), page 661.

We recur to the petition herein in which it is alleged that the respondent's detention and restraint is unlawful and unconstitutional in that he was denied due process of law because:

"Petitioner's guilty plea was induced by the written promise and agreement dated January 13, 1936, of * * *, then

Solicitor of the Thirteenth Judicial Circuit, and * * *, then Chief of Police of the City of Greenville, that if he would plead guilty as charged he would only serve ten years and possibly less, and they would aid in his parole, a copy of said agreement being attached hereto."

The petition of the respondent is specific in that it is alleged that the guilty plea was induced by the written promise and agreement of the Solicitor and the Chief of Police of the City of Greenville, that if he would plead guilty he would only serve ten years and possibly less. There is no proof of this fact in the record. The promise and agreement, a copy of which said agreement was attached to the respondent's petition, is to the contrary. The written promise made by the Solicitor and the Chief of Police is definite, clear, explicit and unambiguous. The only promise made in such letter was that if the respondent entered a plea of guilty to murder with recommendation to mercy that the officers would "after the said Ray Bailey has served for a period of not exceeding ten years, recommend to the Board of Pardons or Governor a pardon or parole." It is stipulated that the Solicitor never conferred with the respondent and that the written promise and agreement was explained to him by his employed counsel.

A study of the entire record in this case leads us to the conclusion that the respondent has failed to prove by a preponderance of the evidence that he was misled, deceived or overreached in any way. There is nothing to show that the plea was induced by coercion, false promises or misrepresentations. The respondent's plea of guilty was freely, voluntarily and understandingly made after full consultation with his brother and his employed counsel. The record is entirely free of any evidence that the plea of guilty entered by the respondent was induced or in any way influenced by any improper act or advice of his counsel but was entered after full disclosure to him by his counsel of its nature and possible consequences. There is a total absence of any proof that any one connected with the State, or even the respondent's own

counsel, did or said anything which destroyed the voluntary character of his plea of guilty.

■ It is our conclusion, under all the facts and circumstances as revealed by the record in this case, that the respondent was not deprived of any rights guaranteed to him under the Constitution of the United States or of this State. We further conclude that the finding by the lower Court that respondent's plea of guilty was not voluntarily made is erroneous and should be set aside.

The judgment of the lower Court is reversed. The writ of *habeas corpus* is discharged and the respondent is remanded to custody for the service of the sentence imposed upon him by the Court of General Sessions for Greenville County.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.