18582

Leldon MYERS, Appellant, v. STATE of South Sarolina et al.,
Respondents

(151 S. E. (2d) 665)

*Mrs. Betty M. Sloan,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Ed-Ward B. Latimer, Assistant Attorney General,* of Columbia, *for Respondents,*

December 5, 1966.

BRAILSFORD, Justice.

This is an appeal from an order of the circuit court dismissing a writ of *habeas corpus* and remanding the petitioner, Leldon Myers, to custody.

Upon their trial in the Richland County Court of General Sessions in January, 1957, Myers and a co-defendant, Hershall Van Hillsman, were convicted of violating the safe cracking statute and were sentenced to life imprisonment. Upon the filing by Myers, *pro se,* of a petition for *habeas corpus,* alleging, among other grounds, that he was without counsel at his trial, the court appointed two attorneys to represent him. After a full hearing, the court found that Myers was properly represented by counsel at his trial and found that none of the grounds of his petition was established by the evidence.

On this appeal, Myers is represented by retained counsel, of his own selection, who did not participate in the trial or in the *habeas corpus* hearing. Although Myers testified at the hearing that only his co-defendant was represented by counsel at the trial, it is now conceded that the same attor-

ney was retained by the two defendants, and undertook the defense of both of them. The position now urged in the brief is that the conduct of trial counsel amounted to inadequate representation, in derogation of Myers' constitutional right to the effective assistance of counsel.

It is, of course, well settled that mere perfunctory representation by counsel does not satisfy the constitutional rights of an accused. *Turner v. State of Maryland,* 4 Cir., 1962, 303 F. (2d) 507. On the other hand, "the quality of the service rendered by counsel meets all requirements of due process when counsel is a member in good standing of the Bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and, his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible, nor to do the impossible, since the defendant is entitled to a fair trial and not a perfect one or a perfect result." *Tillman v. State,* 244 S. C. 259, 264, 136 S. E. (2d) 300, 303. See also *Welch v. MacDougall,* 246 S. C. 258, 143 S. E. (2d) 455.

The brief challenges the adequacy of the performance of trial counsel in the following respects only:

1. In attempting to represent two defendants with conflicting interests. 2. In failing to use compulsory process to obtain witnesses for the defense. 3. In denying Myers the right to testify in his own behalf.

One who seeks release by *habeas corpus* has the burden of establishing a legally sufficient ground by the greater weight or preponderance of the evidence. *Bailey v. MacDougall,* 247 S. C. 1, 145 S. E. (2d) 425. The record on appeal simply does not support any one of the grounds assigned.

Myers and his co-defendant, Hillsman, were well acquainted. It was through Myers that Hillsman met Max Malisha Levy, who later became their trial counsel. Mr. Levy, then seventy-three years of age, had practiced law

for forty-three years and was president of the Lee County Bar Association. He was a bachelor and testified to an intimate acquaintance with Myers and his family, arising from his friendship with Mrs. Myers' sister. In his testimony at the *habeas corpus* hearing, Myers referred to Mr. Levy as Malisha.

The offense for which Myers and Hillsman were convicted was committed late at night. Both defendants proclaimed their innocence and neither professed any knowledge of the offense. Hillsman testified that he was in Tennessee at the time. Myers did not testify. However, according to the statement of his counsel in oral argument in this court, he claimed to have been at work on his job at a bottling plant when the offense was committed. We find no conflict in the interests of the two defendants and none of substance has been pointed out by counsel.

In his testimony at the *habeas corpus* hearing, Myers stated that he "had some witnesses but—couldn't subpoena them" because he was locked up in the Penitentiary prior to his trial and "couldn't get any word off of 'death row' to any witnesses to come to the trial." He did not state that he made known his desire to have any witnesses present to any officer, the court or anyone else. Denying that he was represented by Mr. Levy, it would have been inconsistent for him to testify that he requested Levy to subpoena witnesses and he made no such claim. He did state that he believed he could have had a better trial if he could have had his witnesses there to say that he was "at some other place when the crime happened."

The position that Myers was not represented at the trial has been abandoned in favor of the claim of inadequate representation in the particulars already stated. Levy, testifying as a witness for the State, readily acknowledged that Myers told him of three witnesses whom he wanted at the trial. One was interviewed by Levy, but he was not willing to testify, inferentially, as Myers desired, and refused to come to the trial. Levy tried to locate an-

other, who had worked at the bottling plant where Myers was employed, but was unsuccessful. Levy found that the third person had left South Carolina and was in Alabama at the time of the trial. That Levy failed to issue subpoenas for persons requested by Myers as witnesses, one of whom proved uncooperative on being interviewed, one of whom he could not locate, and one of whom was beyond the jurisdiction of the court does not establish disinterest in his client's cause or lack of professional diligence or acumen. Furthermore, the record fails to suggest any reasonable ground for believing that any of these persons would have been of assistance to Myers if they had been available as witnesses, nor even, as to two of them, that they could have been produced in court by subpoena.

Myers' testimony as to why he did not testify at the trial is at best evasive and inconsistent. He said that he didn't know that he had the right to take the stand because he "wasn't asked." He did not tell Levy that he wanted to testify because, according to Myers, Levy was representing only Hillsman. Any semblance of support for the assertion that it was Levy's conduct which deprived Myers of the right to testify must be found in Levy's testimony which was to the following effect. After having interviewed Myers a number of times and conducted other investigations, Levy, in the exercise of his best professional judgment, concluded that Myers should not testify. After forming this opinion, Levy and Myers "conferred about it and Myers did not go on the stand." This testimony suggests a voluntary choice to follow his counsel's advice rather than a deprivation of Myer's right to testify in his own behalf. Furthermore, the inference from the record and oral argument is that Levy's advice was based on sound reason. If Myers had testified that he was at work at the late hour when the crime was committed, without producing corroborative evidence which the jurors would reasonably have expected to be readily available if the testimony were true, it would likely have worked to his decided disadvantage in their deliberations.

Affirmed.

Moss, C. J., Lewis and Bussey, JJ., and Lionel K. Legge, Acting Associate Justice, concur.