**Ray S. BAILEY, Appellant,**

v.

**Ellis C. MacDOUGALL, Director of the South Carolina Department of Corrections, et al., Appellees.**

**No. 11735.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 4, 1967.

Decided Feb. 28, 1968.

---

Betty M. Sloan, Columbia, S. C., for appellant.

Edward B. Latimer, Asst. Atty. Gen. of South Carolina (Daniel R. McLeod, Atty. Gen. of South Carolina, and B. O. Thomason, Jr., Sol., Thirteenth Judicial Circuit, on brief), for appellees.

Before BOREMAN, BRYAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Ray S. Bailey was sentenced to life imprisonment in 1936 upon a plea of guilty to murder. Now Bailey challenges the validity of his plea, which was entered after the chief of police and the state's solicitor promised in writing they would recommend parole or pardon after Bailey had served a term not exceeding ten years. We hold that Bailey's arraignment was defective and the record fails to establish he understood the consequences of his plea. We remand the case for proceedings consistent with this opinion.

Bailey applied for a writ of habeas corpus in 1964 in the Court of Common Pleas for Richland County, South Caro-

lina. After a full evidentiary hearing, the court found that Bailey's guilty plea was not voluntary, and ordered a new trial. Upon appeal the Supreme Court of South Carolina reversed and entered final judgment discharging the writ.[1] Bailey then applied to the United States District Court for a writ of habeas corpus, which was denied upon the basis of the state records without a plenary hearing.

A policeman, attempting to thwart a bank robbery, was killed in 1932 in Greenville, South Carolina. A few days later Bailey was charged with murder. Following an unsuccessful fight against extradition from North Carolina,[2] Bailey fled to Georgia. He was captured and returned to Greenville for trial. His brother, C. M. Bailey, and other members of his family retained a capable and experienced lawyer to defend him. He steadfastly maintained that he was not in Greenville the night of the murder, and upon his arraignment he pleaded not guilty.

The mainstay of the prosecution's case was a witness named Corea, who identified Bailey as the murderer of the policeman. Corea was sentenced to prison for robbery and refused to testify unless he was pardoned. The South Carolina solicitor who was prosecuting the case knew that another eyewitness was unable to identify Bailey positively. He also knew a number of witnesses would support Bailey's alibi. The solicitor suggested to Bailey's lawyer that Bailey plead guilty "with a recommendation to mercy."[3] This plea would result in a mandatory life sentence. Bailey's lawyer did not know Corea refused to testify.[4] He thought the evidence would be sufficient to take the case to the jury and he knew that public sentiment was aroused over the killing. He said that he could advise his client to plead guilty to manslaughter, but the solicitor declined this offer. The lawyers finally agreed that if Bailey would enter a plea of guilty to murder with recommendation to mercy, the solicitor and the chief of police would recommend a pardon or parole after Bailey had served not more than ten years.

The defense attorney advised Bailey that if he did not participate in the shooting he should not plead guilty. The attorney explained that the plea arrangement meant a life sentence would be imposed, and it did not mean the Governor would have to grant parole or pardon. He added that ordinarily the Governor would give great weight to the recommendation of the solicitor and the chief of police.[5] Bailey agreed to plead guilty. His attorney, out of an abundance of caution, required the solicitor and chief

1. Bailey v. MacDougall, 247 S.C. 1, 145 S.E.2d 425 (1965), cert. denied, 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966).

2. Bailey was arrested in North Carolina on a warrant of extradition. On application for habeas corpus, a judge of the Superior Court of North Carolina held that South Carolina had failed to show probable cause for holding Bailey. The Supreme Court of North Carolina affirmed. Ex parte Bailey, 203 N.C. 362, 166 S.E. 165 (1932). The Supreme Court of the United States reversed, holding Bailey had the burden of showing beyond reasonable doubt that he was outside South Carolina. State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933).

3. In South Carolina, a defendant can plead guilty to murder only before a jury, which, pursuant to the plea, returns a verdict of "guilty of murder with the recommendation to the mercy of the court."

4. Bailey urges, "Constitutional due process cannot be satisfied where the prosecution negotiates a guilty plea knowing it has no other means to obtain a conviction and fails to disclose this fact to either the defendant's counsel or the court." Bailey did not seek relief on this ground in the state court, and we do not consider it.

5. When Bailey was arraigned, the Governor of South Carolina had absolute discretion to grant paroles and pardons. Ten years later, the Governor no longer exercised parole powers, although he could pardon. The Parole Board alone granted paroles.

of police to put their promise in writing. They signed this statement:

"This will confirm our conversation that in the event that Ray Bailey enters a plea of guilty with recommendation to mercy in the case now pending against him in the General Sessions Court for Greenville County that I will, knowing the facts of the case and the circumstances surrounding same, after the said Ray Bailey has served for a period not exceeding ten years, recommend to the Board of Pardons or Governor a pardon or parole."

Bailey withdrew his original plea and pleaded guilty with recommendation to mercy. He was sentenced to life imprisonment. No one mentioned the agreement. No inquiry was made to determine whether Bailey's plea was voluntary or whether he understood the charges against him and the consequences of his plea. In the state habeas hearing the solicitor testified that he believed the trial judge was not aware of the agreement.

Bailey's lawyer placed the statement in his safety deposit box. At the expiration of the ten year period, the solicitor, the chief of police, and Bailey's attorney unsuccessfully asked the Governor and the State Parole Board to pardon or parole Bailey.[6]

At the state habeas corpus hearing, Bailey testified that he was not in Greenville at the time the police officer was killed, and that at first he refused to plead guilty. He agreed to change his plea because he was certain any agreement the solicitor made would be carried out. He testified that there wasn't any doubt in his mind that he would be released in ten years.

Bailey was not alone in testifying he believed he would serve only ten years. The assistant solicitor, who investigated the case and was present at the arraignment, testified that " * * * when that plea was entered by that boy, at that time, I was convinced that, after service of these ten years, without doing something in the penitentiary to prevent it, he would have been released. I was convinced of it and I am sure that everybody in the courtroom that knew anything about it was."

■ Bailey raises several questions about plea bargaining. He does not urge the practice in itself is unconstitutional.[7] He does claim the promise rendered his plea involuntary and that his arraignment was constitutionally defective.

The state habeas judge found Bailey believed he would serve not more than ten years and that the agreement leading to his change of plea "vitiated the voluntary nature of the guilty plea." The Supreme Court of South Carolina concluded this judgment was erroneous.[8] The State Supreme Court emphasized that the promise was only to recommend parole or pardon and that it had been kept, that the written statement was unambiguous, and that Bailey's attorney had explained to him that the Governor

---

6. After serving about 14 years Bailey escaped to North Carolina and surrendered. Later he escaped to Montana, where he was captured.

7. Plea bargaining that induces an innocent person to plead guilty cannot be sanctioned. Negotiation must be limited to the quantum of punishment for an admittedly guilty defendant. Cf. Tabor v. United States, 203 F.2d 948 (4th Cir. 1953), cert. denied, 345 U.S. 1001, 73 S.Ct. 1148, 97 L.Ed. 1407 (1953); Anderson v. State of North Carolina, 221 F.Supp. 930 (W.D.N.C.1963).

A comprehensive review of authorities criticizing or supporting plea bargaining is contained in Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 223 A.2d 699 (1966). The practice, when restricted by prudent safeguards, is approved in Institute of Judicial Administration, ABA, Standards Relating to Pleas of Guilty, Part III (tentative draft 1967).; Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865 (1964). The practice is criticized in Curlee, Criminal Law and Procedure, 1966–67 Survey of South Carolina Law, 19 S.C.L.Rev. 30, 34 (1967).

8. Bailey v. MacDougall, 247 S.C. 1, 145 S.E.2d 425 (1965), cert. denied, 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966).

might not follow the recommendation. It concluded that the evidence did not disclose that the plea was induced by coercion, false promises, or misrepresentation, and that Bailey's plea was voluntary.

In Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed. 2d 473 (1962), the Court held:

> "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, reversing 5 Cir., 246 F.2d 571."

■ The voluntariness of Bailey's plea does not depend upon whether he was the victim of a false promise. The question remains: Did the promise, even if fulfilled,[9] induce the plea and deprive it of the character of a voluntary act? Whether Bailey's plea was voluntary raises issues of fact, upon which the state courts differed. The state appellate court's rejection of the state habeas court's findings ordinarily would require us to remand the case to the federal district court for an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). However, we find a remand unnecessary because the case can be decided upon an alternative ground which, under the circum-stances, does not require another evidentiary hearing.

Bailey contends he was denied due process of law because the court did not advise him of the consequences of his plea. In examining whether Bailey fully understood the consequences of his plea, we limit ourselves to the direct consequences—the length of the sentence to be served.[10] Whether Bailey understood the consequences of his plea depends upon whether he understood the plea agreement. He claims the agreement meant he would be imprisoned not more than ten years. The state says the agreement provided only that he would be recommended for parole or pardon at the end of ten years.

In Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), the Court said:

> "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required: the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

■ No particular form or ritual is required, but it must appear that the defendant understood the consequences of his plea.[11] The evidence discloses, how-

---

9. Cf. Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958), reversing on confession of error 246 F.2d 571 (5th Cir. 1957); Edgerton v. State of North Carolina, 315 F.2d 676 (4th Cir. 1963); United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 253 (S.D.N.Y.1966) (dictum).

10. "Courts have not considered it necessary to inform the defendant of possible collateral consequences when such consequences result from subsequent criminal convictions of the defendant or do not relate directly to the charge to which the defendant pleads guilty." Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 875 (1964).

11. Fed.R.Crim.P. 11, as amended in 1966, requires the court to determine this even though the defendant is represented by counsel. Many states also impose such a duty. Others hold the requirement is satisfied where counsel sufficiently informs the accused. Note, Criminal Procedure—Duty of the Trial Judge to Ad-

ever, that no inquiry was made by anyone to determine Bailey's understanding of the consequences of his plea. The judge asked him no questions. Indeed, it appears from the record that the judge himself did not know the full consequences. Bailey's attorney did his best to explain it, but he testified at the habeas corpus hearing that he could not say that Bailey or his brother understood the proposition. Apparently the court and Bailey's attorney assumed that Bailey understood. Bailey challenges the validity of this assumption. He claims he thought the consequences would be not more than ten years' confinement in prison.

Ordinarily there is no great difficulty in ascertaining that the defendant understood the consequences of his plea even when the parties have engaged in plea bargaining. The bargain itself generally is laid before the court through the recommendation and motions of the prosecuting attorney.[12] The difficulty arises in Bailey's case because the promise made by the prosecuting officers was extrajudicial. It was never revealed in open court, although Bailey's attorney and the solicitor both recognized that it was indispensable to securing Bailey's plea and that it had an important bearing upon Bailey's punishment. Regardless of whether we accept the state's or Bailey's version of the plea arrangement, the uncontradicted evidence shows that no effort was made at Bailey's arraignment to determine which version he understood. The dispute about the plea agreement, which must be adjudicated thirty years after arraignment, demonstrates the fundamental unfairness and the lack of due process in placing upon a prisoner the burden of showing by a preponderance of the evidence the terms of an admittedly secret, extrajudicial proviso that could substantially affect the length of his sentence. A prisoner's liberty should not depend upon the astuteness of his attorney in demanding and preserving written memoranda of a plea agreement or upon the vagaries of human recollection decades after arraignment.

■ The defect in Bailey's arraignment lies in the fact that no one—court or counsel—ascertained that Bailey understood the consequences of his plea. Nevertheless, if Bailey in fact understood, the error was harmless. Gundlach v. United States, 262 F.2d 72 (4th Cir. 1958), cert. denied 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255 (1959). The state, however, has the burden of proving harmless error. Cf. Munich v. United States, 337 F.2d 356, 360 (9th Cir. 1964).

■■ The result does not depend upon the prisoner's subjective testimony alone. The issue is one of fact, which must be resolved by an examination of "reasonable inferences to be drawn from all the surrounding facts and circumstances."[13] Ordinarily this issue could be decided only in a plenary hearing in the district court, but this rule is not inexorable. Cf. Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967). Counsel for both Bailey and the respondent have assured us that all evidence that can be marshalled is contained in the record. We

vise a Defendant of the Consequences of a Guilty Plea, 19 S.C.L.Rev. 261 (1967), Annot. 97 A.L.R.2d 549 (1964). We decline to. follow McGrady v. Cunningham, 296 F.2d 600, 96 A.L.R.2d 1286 (4th Cir. 1961), cert. denied, 369 U.S. 855, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962), Now, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), would require a plenary hearing upon the petitioner's allegations.

12. Institute of Judicial Administration, ABA, Standards Relating to Pleas of Guilty § 1.5, p. 29 (tentative draft 1967) suggests the plea agreement should be disclosed to the court, and that the court should advise the defendant that recommendations of the prosecutor are not binding on the court.

13. United States v. Tateo, 214 F.Supp. 560, 565 (S.D.N.Y.1963).

find the material facts for the determination of this issue to be uncontradicted.

Aside from Bailey, the only witnesses who knew about the agreement at the time it was made were the solicitor, the assistant solicitor, and Bailey's attorney. The solicitor never discussed the matter with Bailey and consequently could offer no testimony on this issue. The assistant solicitor testified that at the time of the arraignment he was convinced, barring misbehavior, Bailey would be released after ten years. Thus, he tends to corroborate Bailey. The only witness who actually discussed with Bailey the meaning of the agreement was Bailey's attorney. With regard to Bailey's claim, "I accepted a life sentence with the distinct understanding that I would be free in ten years," Bailey's attorney testified, "He may have understood it that way * * * even though I tried to explain to him the circumstances of it, not being a lawyer and not being familiar with legalities and things of that kind. It's possible that Mr. Bailey felt that that would happen." This evidence does not establish whether the state's version or Bailey's version of the plea agreement should be accepted. The evidence demonstrates, however, that the state has not carried its burden of proving harmless error by showing Bailey understood what the state claims to be the consequences of his plea.

Under familiar principles of due process, a guilty plea cannot be accepted unless the defendant understands its consequences. At the arraignment the court made no effort to ascertain what Bailey understood, either through its own efforts or through counsel, and the state has failed to show this error was harmless. The judgment of the district court is reversed and this case is remanded for the issuance of a writ of habeas corpus. Execution of the writ may be stayed for a reasonable time to permit the State of South Carolina to to retry Bailey if it be so advised.

Reversed and remanded.