(No. 30199.—▮▮▮▮▮▮▮▮▮▮▮▮▮)
CHARLOTTE CIENKI, Appellee, *vs.* WILLIAM RUSNAK, Appellant.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, and ALVIN I. WEINSTEIN, of counsel,) all of Chicago, for appellant.

JOSEPH F. ELWARD, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Charlotte Cienki, brought an action in ejectment against the defendant, William Rusnak, in the superior court of Cook County claiming title in fee simple to a 20-foot strip of land, constituting part of lot 10 in block 1 of Whapple's subdivision, in Oak Park. In addition to a general denial, defendant set up several affirmative defenses and filed a counterclaim seeking affirmative relief. The issues were tried before the court without a jury. From a judgment in favor of the plaintiff and a dismissal of the counterclaim for the want of equity, defendant prosecutes a direct appeal, a freehold being necessarily involved.

Lot 10 in block 1 in Whapple's subdivision is an inside lot, 50 feet wide and a full city block in length. Running north and south, it fronts on North Boulevard on the south and Westgate Avenue on the north. Since the location of the south line of the lot is disputed, the exact length of the property is subject to two interpretations. Taking the north line of North Boulevard, as occupied, as the south line, the lot is 232 feet deep; taking the south line of lot 10 as originally platted, the depth is only 212 feet, such south line being 20 feet north of the street line

of North Boulevard. In any event, improvements on the property extend up to the north line of North Boulevard. The buildings, three in number, were all erected at least thirty years ago. Commencing at the street line of North Boulevard there is a two-story brick garage, extending the entire width of the lot and running 120 feet north. Proceeding north, the next 32 feet are occupied by a two-story frame garage on the west 22 feet of the lot, the east 28 feet of this portion of the lot being unimproved. The west half of the next 73½ feet is improved with a two-story brick building, while the east half is vacant. The remaining or north 18½ feet of the lot were taken by the village of Oak Park, in 1931, for the extension of Westgate Avenue. The disputed 20-foot strip lies immediately north of the brick garage. Stated otherwise, it is the north 20 feet of the south 120 feet of lot 10, using the original south line of the lot as the correct south line or, designating the north line of North Boulevard as the south line of the lot, it is the 20 feet north of the south 120 feet of lot 10. It follows that the west part of the strip in question is occupied by the south 20 feet of the 32-foot frame building and that the east part is vacant.

The parties claim under a common source of title. In 1927, the then owners executed a trust deed on the entire premises and, later the same year, the south 120 feet of lot 10 were released from the lien of the trust deed and conveyed out. By *mesne* conveyances, plaintiff acquired title to the south 120 feet of lot 10 in 1941. In 1931, the north 18½ feet of the lot were released from the lien of the trust deed, this part of the lot having been condemned and taken for the extension of Westgate Avenue. The remainder of the lot was subject to foreclosure proceedings in 1931, a decree of foreclosure being obtained in 1932, and a master's deed issuing in 1934. The master's deed erroneously describes the property conveyed as all of lot 10. Notwithstanding this error, Warren F. Lie-

belt, owner of the trust deed and grantee under the master's deed, upon conveying the premises to defendant on December 26, 1944, specifically excepted the north 18½ feet taken for streets and the south 120 feet, and further provided that the land conveyed was "subject to encroachment of frame garage in rear of premises in question and premises adjoining to the south over on premises in question about 12 feet." In 1945, plaintiff caused her land to be surveyed and subsequently broke through the solid brick wall at the north end of her garage in order to gain access to the strip in question. Over defendant's objection, plaintiff fenced in so much of the disputed land as is unimproved, and this action followed.

By her complaint, plaintiff alleged that she is the owner in fee simple of the disputed strip, it being the north 20 feet of the south 120 feet of lot 10, taking the original south line as the south line of the lot, and that defendant unlawfully withheld possession from her. Defendant's amended answer set up four defenses, the first of which was a general denial. As a second defense, defendant claimed title to the disputed strip by possession of the land under color of title and payment of taxes for over seven years. The third defense set forth that, as a consequence of an adjudication in 1931 determining that each of the owners of lots in block 1 owned the fee up to the street line of North Boulevard, the south 120 feet of lot 10 owned by plaintiff commenced at the north line of North Boulevard and extended only to the south line of the disputed strip. Fourth, defendant averred that plaintiff was estopped from maintaining her action because the parties' respective predecessors had recognized and established the north line of plaintiff's building as the boundary line. The counterclaim in chancery adopted all the allegations contained in the four defenses, and sought the entry of a decree adjudging counterclaimant the owner in fee simple of the disputed strip, directing counterdefendant

to remove the fence, and restraining her from interfering with counterclaimant's ownership and possession of the premises. At the trial, proofs were submitted on all issues. The court found for plaintiff, rendered judgment in her favor and dismissed defendant's counterclaim.

Except for several procedural matters, all the errors assigned by defendant as grounds for reversal may well be enclosed in the single contention that the judgment and the decree are contrary to the law and the evidence. In this connection, the complaint and the first and third defenses may be considered together. Plaintiff introduced in evidence an abstract of title showing that she is the owner of record of the south 120 feet of lot 10 and produced four surveys designating the south line of the lot as originally platted and not the north line of North Boulevard as the true south line of the lot. Based on the surveys, the disputed strip constitutes the north 20 feet of the south 120 feet. It is abundantly clear that the south line as originally platted, running parallel to and 20 feet north of the north line of North Boulevard, is the true south line of the lot. Strangely enough, the deed by which defendant holds title to the north part of the lot and the adjudication referred to in the third defense both fortify plaintiff's contention as to the correct location of the south line of the property. As related, defendant's deed recites a conveyance of lot 10 except the north 18½ feet taken for streets and the south 120 feet, subject to the encroachment of the frame garage over on the premises conveyed to the extent of about 12 feet. In the light of the circumstance that the frame garage is 32 feet long and that plaintiff claims the south 20 feet thereof, the only possible conclusion to be derived from the exception in the deed is that the garage extends over on defendant's land about 12 feet and that the true boundary line between the two properties lies 12 feet south of the north end of the frame garage. This line is 120 feet north of the south line of

lot 10 as originally platted, and 140 feet north of the north line of North Boulevard.

The adjudication referred to in the third defense is case No. 518274 in the superior court of Cook County, entitled Murphy Brothers Teaming Co. v. Village of Oak Park, wherein the then owners of lots 8, 9, 11, 12 and 13 in block 1 of Whapple's subdivision sought to quiet title to a strip of land approximately 20 feet wide lying between the south line of block 1 and the north line of North Boulevard as actually laid out and established. The village of Oak Park filed an answer and disclaimer, and a decree in favor of plaintiffs issued as a matter of course. Even though the trial court held the decree inapplicable to the case at bar because lot 10 was not involved in the earlier proceeding, it may be noted that the decree, far from establishing the north line of North Boulevard as the south line of the lots in block 1 of Whapple's subdivision, as contended by defendant, clearly differentiates between the street line and the south line of the lots as originally platted, and holds that the owners of the lots are entitled to the 20 feet between the south line of their lots and the street line.

By his second defense, defendant sought to defeat plaintiff's title to the strip in question by establishing title in himself, conformably to section 6 of the Limitations Act. The statute provides, "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay

the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section." Ill. Rev. Stat. 1945, chap. 83, par. 6.

The possession, color of title and payment of taxes, required by the statute, must exist concurrently, without interruption, and must continue throughout the same seven years. (*Gochenour* v. *Logsdon*, 375 Ill. 139; *Town of Kaneville* v. *Meredith*, 361 Ill. 556.) In the case at bar, the trial court found for defendant on the question of possession and against him on the issues of payment of taxes and color of title. Possession of the disputed strip by the defendant and his predecessors during the years from 1935 to 1945 was virtually admitted at the trial. In respect to payment of taxes the evidence was conflicting. Here, the burden of proof was on defendant and it was necessary that the evidence offered on the question be clear, positive and free from suspicion in order to satisfactorily show that the taxes had been paid by him and his grantor. (*Gochenour* v. *Logsdon*, 375 Ill. 139; *Meyer* v. *Jopson*, 349 Ill. 601.) The evidence relative to taxes consists of tax receipts and property record cards. The tax receipts issued to the parties and their predecessors during the years in question describe the properties as being the "south 120 feet of lot 10" and "lot 10 except north 18½ feet and except south 120," respectively. The disputed premises constitute the north 20 feet of the south 120 feet of lot 10 and, consequently, the tax receipts show that plaintiff and her privies in title,—not defendant and his grantor,—paid the taxes on the disputed strip. Defendant introduced in evidence the original property record cards from the county assessor's office, apparently on the theory that the property record cards clarified and explained the tax receipts. (*Stumph* v. *Osterhage*, 111 Ill. 82.) The property record cards are somewhat confusing but, construing the evidence most favorably to defendant,

they show that the assessor considered all the lots in block 1 to include the 20-foot strip between the south line of the lots and the street line of North Boulevard and that, in computing valuations, the "south 120 feet of lot 10" was deemed to be 120 feet deep and "lot 10 except north 18½ feet and except south 120 feet" was calculated as being 94 feet deep. Since the property acquired by defendant pursuant to his deed is but 73½ feet in depth, defendant argues that he paid the taxes on the disputed strip. Because the record owner of the south 120 feet of lot 10 also owns the 20 feet immediately south of the lot and extending up to the street line, a depth factor of 140 feet should have been employed in determining the value of the property owned by plaintiff and her predecessors. That the disputed strip constitutes the 20-foot shortage may be inferred both from the overestimate of 20 feet in the depth of the north part of the lot and from the fact that all of the 120-foot brick garage fronting on the street line of North Boulevard was included in the valuation of the "south 120 feet of lot 10." On this state of the record, it is obvious that, in computing the valuations of the respective properties, the assessor mistakenly assigned the strip in question to the north part of the lot. Thus, the most that defendant's evidence shows is that the assessor erred in computing the depth of his fractional lot and that he and his grantor were overcharged. The tax receipts held by plaintiff and her predecessors show payment of taxes on the south 120 feet of lot 10. The "south 120 of lot 10" includes the disputed strip, and plaintiff and her predecessors had a right to rely on the legal description therein contained, the erroneous computations of the assessor being in nowise binding on plaintiff in respect to the present controversy. Upon the record made, defendant has not met the burden of proving by clear, unmistakable and positive proof that he and his grantor paid the taxes on the disputed strip.

Failure to prove that possession of the disputed strip was coupled with color of title constitutes a second fatal objection to defendant's claim of title by virtue of section 6 of the Limitations Act, although here again the defendant assigns the finding of the trial court against him as error. Under the statute, as quoted, ownership of land by possession and payment of taxes under claim and color of title can be obtained only to the extent and according to the purport of the paper title. (*Nilson Bros. Inc.* v. *Kahn,* 314 Ill. 275.) Defendant claims title to the disputed strip and must, therefore, show a paper title in himself. The paper title to all of lot 10 acquired by defendant's grantor as a result of an error in the master's deed following the foreclosure proceedings is not available to defendant unless he can show a conveyance from his grantor broad enough to cover the 20 feet in question. The deed under which defendant claims does not purport to include the disputed premises, because, as previously indicated, it establishes the south line of his property as being only 12 feet, not 32 feet, south of the north line of the frame garage. To establish a paper title, defendant relies on two other documents, the first of which is the contract of sale pursuant to which he purchased his property. Even ignoring the inadmissibility of the contract on the ground that it had been merged into the deed, the description of the property fails to include the 20-foot strip. The contract recites that the property sold is "Lot 10 (except North 8' 5") and (except south 120')" and states the dimensions of the land as being "approximately 50' x 83' 6"." To prove color of title to the 20-foot strip, defendant must show a paper title to a fractional lot 93½ feet deep. The description of the lot as being 83½ feet deep is as meaningless as the recital that only 8½ feet were taken for streets is erroneous. Since the north 18½ feet were taken for streets, a deficiency of 10 feet exists in this item. If the deficiency is supplied by reducing the lot depth from

83½ feet to 73½, the resulting dimensions are identical with those derived from the deed itself.

For color of title defendant also relies on a sentence, written in longhand, which follows a postscript in a typewritten letter addressed by the seller's attorney to the buyer's attorney and dated December 27, 1944, one day after the execution of the deed to defendant. The letter relates to the 20 feet of lot 10 here in controversy and provides that the seller shall return $2000 to the buyer in the event he is unable to give a warranty deed or a guaranty policy to the 20-foot strip prior to July 1, 1946. The sentence reads as follows: "Irrespective of any objections above referred to, the seller Liebelt hereby releases and transfers unto purchaser Rusnak all right, title and interest in and to all the above premises, including the questioned 20 feet. (signed) Samuel Spitzer." As a document of title the letter is highly informal, it is not under seal, and no power of attorney was introduced during the course of the trial to show that Liebelt had authorized Spitzer to execute a conveyance of any part of lot 10. It was for this last reason that the trial court correctly ruled the letter to be inadmissible. Eight days after the conclusion of the trial, the court being ready to announce its decision, defendant moved for leave to reopen proofs and introduce in evidence a power of attorney executed by Liebelt two days after the end of the trial, which authorized and ratified the acts of Spitzer in relation to the questioned 20 feet. The motion was denied and the denial of the motion is assigned as error. The matter of allowing a case to be opened up for taking further evidence rests in the sound judicial discretion of the trial court and will not be interfered with except for clear abuse. (*Forest Preserve Dist.* v. *Lehmann Estate, Inc.,* 388 Ill. 416; *Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11.) In the case at bar, defendant was represented of record by competent counsel for at least four months prior to the trial. Indeed, his orig-

inal attorney of record, who was subsequently replaced but remained in the case both at the trial and on appeal, was the same attorney who represented defendant in the purchase of the property and presumably was aware of the existence or nonexistence of a power of attorney from Liebelt to Spitzer. As to the power of attorney itself, it was witnessed but not notarized and there was no showing of its genuineness. Again, the document contained two descriptions of the real estate, only one of which was correct and, finally, it was executed not only after the closing of the deal, but also after the present litigation had been initiated and after the trial had been concluded. Under these circumstances, the trial judge, in denying defendant's motion to reopen proofs, was well within the limits of sound judicial discretion.

Defendant's fourth defense is grounded on the well-settled rule that where a boundary line between adjoining owners of land is unascertained or in dispute, they may establish it, first, by parol agreement and possession pursuant thereto, second, by an agreement implied from the unequivocal acts and declarations of the parties and acquiescence for a considerable period of time and, third, in the absence of any agreement, by undisturbed possession for more than twenty years. (*Purtle* v. *Bell*, 225 Ill. 523; *Clayton* v. *Feig*, 179 Ill. 534.) Defendant averred that the boundary line was unascertained and that the predecessors of the respective parties had fixed and established the north line of plaintiff's building as the boundary line by their unequivocal acts, plaintiff's predecessors having erected the two-story brick garage with a solid brick wall on the north end leaving no access to the disputed strip, while defendant's predecessors in title had access to and were in possession of the 20 feet in question for some ten or fifteen years. The trial court found that not only was the boundary line readily ascertainable and not in dispute, but also there was no showing of any agreement to fix a boundary

line. We see no reason to disturb the findings. For one thing, there is no evidence whatsoever as to any dispute about the boundary line and, as this opinion discloses, the line is readily ascertainable. More important, however, is the fact that there was neither a parol agreement nor twenty years' adverse possession, and the construction of the brick garage with a solid wall facing the south line of the disputed strip is utterly devoid of any implication of an agreement to fix a boundary line because the building was erected prior to the division of lot 10 into two separate parcels.

Lastly, defendant urges that plaintiff's failure to file a reply to the amended answer constitutes an admission of the facts appearing in the affirmative defenses and that, therefore, the court erred in overruling defendant's motion, allegedly made at the close of plaintiff's case, to find the issues for defendant. The facts leading up to the failure to file a reply to the second answer must be recounted. Plaintiff's complaint was filed June 15, 1946, and an answer and reply followed in due course. The trial was set for January 31, 1947. On the day named, counsel for defendant moved for a change of venue, the motion being denied because made for the purpose of delay. For the reason defendant had that very day left for Florida "on account of ill-health," the trial was reset for February 11. Prior to this date, a substitution of attorneys for defendant was effected and the trial reset for February 20. On February 13, defendant filed his amended answer and counterclaim, obtained a rule on plaintiff to plead thereto within ten days and the cause was continued to March 4 for trial.

Plaintiff's reply to the amended answer was followed by a motion to strike and, on February 28, defendant moved that the motion to strike be set down for hearing. The motion was denied and plaintiff's motion for leave to withdraw her reply *instanter* and to excuse a reply with-

out any admission of any of the facts pleaded in the amended answer was allowed. March 3, defendant moved to strike so much of the order of February 28 as excused plaintiff from filing a reply without making any admissions. This motion, based on an affidavit that plaintiff's counsel had misinformed the court as to the content of the draft of the order of February 28, was denied. At the hearing on March 4, defendant's counsel stated that, in going to trial, defendant did not waive the failure to file a reply. After plaintiff had concluded her case and after defendant had examined plaintiff under section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1945, chap. 110, par. 184,) defendant then moved to find the issues in his favor. His motion was denied. Defendant thereupon introduced evidence on all issues set up in the amended answer.

The failure to file a reply did not constitute an admission of the well-pleaded facts set forth in the amended answer for the reason that defendant, in introducing evidence in support of each affirmative defense, must be deemed to have waived a reply, regardless of the allegedly erroneous order of February 28 and regardless of his denial of waiver made at the commencement of the trial. Where, in the absence of a reply, defendant introduces evidence to prove an affirmative defense, the failure to file a reply is waived and the absence of a reply does not constitute an admission. (*Watt* v. *Cecil,* 368 Ill. 510; *Piot* v. *Davis,* 241 Ill. 434.) This is true even where defendant specifically asserts at the time of the trial that he does not waive the failure to file a reply. The important and controlling circumstance is not what the defendant says but what he does, and the introduction of evidence in support of affirmative defenses constitutes the waiver.

The judgment and the decree of the superior court of Cook County are each affirmed.

*Judgment and decree affirmed.*