**Frankie Joe TODD, Petitioner,**

v.

**A. L. LOCKHART, Superintendent, Cummins Unit, Arkansas Department of Correction, Respondent.**

**No. PB–72–C–58.**

United States District Court, E. D. Arkansas, Pine Bluff Division.

July 9, 1973.

William H. Hodge, Little Rock, Ark., for petitioner.

Ralph C. Hamner, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

In this habeas corpus proceeding, Frankie Joe Todd, an inmate of the Cummins Unit of the Arkansas Department of Correction, collaterally attacks his 1970 conviction in the Circuit Court of Ouachita County, Arkansas, of the offense of second degree murder. The conviction followed the Circuit Court's acceptance of a bargained plea of guilty. Petitioner was sentenced to imprisonment for a term of 15 years, but with service of the last three years of the sentence suspended. Petitioner contends that the proceedings leading up to his conviction were tainted with denials of due process of law, that the conviction should be set aside, and that he should be permitted to enter a plea of not guilty and stand trial in the Circuit Court. The cause is now before the Court on the cross motions of the parties for summary judgment, plus a motion to dismiss the petition filed on behalf of respondent.

The record before the Court includes, in addition to the pleadings, a complete transcript of the proceedings involving petitioner that have been had in the Circuit Court, including those incident to an application for post-conviction relief which petitioner filed in the sentencing Court as provided by Criminal Procedure Rule 1 of the Supreme Court of Arkansas.

The Court considers that an evidentiary hearing in this case would be nothing but a re-hash of the hearing held by the Circuit Court on the Rule 1 petition, and that no useful purpose would be served by holding another hearing here.

The procedural history of the case is as follows:

On or about May 16, 1970, an individual identified in the record as Olen Butler was shot and killed in Ouachita County. There seems to be little or no question that petitioner in fact killed Butler. In any event, petitioner was promptly arrested and placed in jail.

Under Arkansas law petitioner was potentially faced with being charged with any one of three grades of nonnegligent homicide, namely, murder in the first degree, murder in the second degree, or voluntary manslaughter. Had he been charged with murder in the first degree, the charge would have included the two lesser degrees of the offense that have been mentioned. Under Arkansas law in 1970 the maximum punishment for first degree murder was either death or life imprisonment; the maximum punishment for second degree murder was imprisonment for not more than 21 years; and the punishment for voluntary manslaughter was imprisonment for not less than two nor more than seven years with a possibility that the sentence might be increased by an-

other seven years since a firearm had been involved in the killing.[1]

On May 18, 1970, the Circuit Court was in session in Ouachita County, and on that date the Prosecuting Attorney, John M. Graves, filed an information charging petitioner with second degree murder. Petitioner was arraigned on that date before the Honorable Harry Crumpler, a capable, conscientious, and experienced Circuit Judge. Prior to the arraignment Harry Barnes, Esq., a member of the Ouachita County Bar, conferred with petitioner at the request of either Judge Crumpler or Mr. Graves, and when petitioner was arraigned, Mr. Barnes appeared as his attorney.

Immediately prior to the arraignment the Prosecuting Attorney on the basis of information that he had at hand at the time felt that probably petitioner was not guilty of anything more than manslaughter, and he offered to recommend a five year sentence with a substantial part of it suspended if petitioner would plead guilty to manslaughter. This petitioner declined to do.

When petitioner was brought before the Court, he was advised by Judge Crumpler of the penalty for second degree murder and of certain of his constitutional rights. A plea of not guilty was entered, and the amount of petitioner's bail was fixed at $10,000 which he was not able to furnish.

In connection with the matter of bail the Prosecuting Attorney stated in open Court in the presence of petitioner and his counsel that information had come to the Prosecuting Attorney "in the last few minutes" indicating that petitioner ought to be charged with murder in the first degree rather than murder in the second degree. The Court stated that the information could be amended, but that petitioner would have to be re-arraigned after any amendment.

Thereafter, Mr. Barnes was relieved of his responsibility as counsel for petitioner, and members of the petitioner's family employed Julian Street, Esq. of the Ouachita County Bar to represent petitioner. There is no question that Mr. Street was and is a reputable and competent attorney.

The case was set for trial on September 10, 1970, and between May and September 9 the Prosecuting Attorney and Mr. Street engaged in serious plea bargaining. While the information was never amended to charge petitioner with first degree murder, the possibility of such an amendment was a factor that was present in the minds of all concerned in the bargaining, including petitioner. Finally, on September 9 the Prosecuting Attorney agreed to recommend in exchange for a plea of guilty to second degree murder, a sentence of 15 years with the last three years suspended. Petitioner was brought before the Court and entered a guilty plea which was accepted. The Prosecuting Attorney made his recommendation, and it was accepted. The record reflects that part of the original agreement was that execution of the sentence would be stayed for some days to allow petitioner to wind up some affairs, but in open Court on September 9 petitioner waived that part of the agreement, and he was promptly transported to the Department of Correction where he has since been confined.

By late October 1970 petitioner had applied to this Court for relief or for an order directing the Circuit Court to give him a post-conviction hearing. The

[1.] The basic penalty for voluntary manslaughter is fixed by Ark.Stats., Ann., § 41–2229. However, section 1 of Arkansas Act 78 of 1969, Ark.Stats., Ann., Cum. Supp., § 43–2336, provides that if a firearm is used in the perpetration of any felony the defendant in the discretion of the sentencing court may be imprisoned for an additional term of imprisonment of not more than seven years. Act 78 is not involved in this case. It was considered by the Arkansas Supreme Court in Johnson v. State, 1970, 249 Ark. 208, 458 S.W. 2d 409. A majority of the Court thought it to be of doubtful validity and held it to be unconstitutional in application in that particular case.

Court declined to do either and advised petitioner that he must proceed by a petition filed in the Circuit Court under Criminal Procedure Rule 1. Petitioner took that course, and counsel was appointed to represent him. For reasons that need not be stated here that petition was not heard on the merits until September 17, 1971, on which date a plenary hearing was held. Petitioner was represented at the hearing by Mr. Charles L. Honey of Prescott, Arkansas, who had been employed to represent petitioner. After hearing the testimony of petitioner, Mr. Graves, Mr. Barnes, and Mr. Street, the Circuit Court made certain findings which are in the record before the Court, and denied the petition. Petitioner prayed and was granted an appeal to the Supreme Court of Arkansas.

Petitioner encountered considerable difficulty in perfecting his appeal due to apparent delay on the part of the Circuit Court Reporter in preparing the necessary transcript. Faced with this delay petitioner filed the instant petition in this Court on April 27, 1972. At that time Mr. Honey was still representing petitioner, and the transcript of the Rule 1 proceeding had been completed essentially.

On May 1, 1972, this Court filed a memorandum opinion in which it discussed the history and posture of the proceedings involving petitioner. The Court concluded that in view of the delays in connection with petitioner's appeal, this Court should assume jurisdiction of the case at least to the extent of permitting the petition to be filed and issuing a show cause order. An appropriate order was entered.

On May 18, 1972, respondent showed cause, and alleged the pendency of the appeal, and the final completion of the transcript of the Rule 1 hearing. Respondent also denied the substantive allegations of the petition.

The petition was held in abeyance until the Supreme Court of Arkansas should decide petitioner's appeal. On October 16, 1972, that Court affirmed the judgment of the Circuit Court denying petitioner's application for post-conviction relief. Todd v. State, 1972, 253 Ark. (Adv.Ops.) 283, 485 S.W.2d 533.

Thereafter, upon request from the Court the Attorney General of Arkansas, counsel for respondent, brought into the record the transcript of the State Court proceedings. The Court examined the transcript and concluded tentatively that petitioner's allegations were without substance. However, the Court's examination of the transcript raised in its mind the question of whether the Circuit Court in accepting petitioner's plea had complied sufficiently with the requirements of Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

On December 27, 1972, the Court filed a memorandum raising the Boykin question and requesting Mr. Honey who has been mentioned to represent petitioner in further prosecution of the petition. It turned out that Mr. Honey was to serve in the Arkansas Legislature which was about to convene, and the Court ultimately appointed petitioner's present counsel, William H. Hodge, Esq., of Little Rock to represent petitioner.

In connection with the motions now before the Court both sides have briefed the *Boykin* issue, and the Court considers that the case is now ready for final disposition.

In *Boykin*, supra, a majority of the Supreme Court held that it is constitutional error for a State court to accept a plea of guilty without an affirmative showing that the plea is being entered intelligently and voluntarily, and that waiver of valuable procedural rights guaranteed by the Fifth and Fourteenth Amendments will not be presumed from a "silent record." The late Justices Black and Harlan dissented.

In his brief in support of his motion for summary judgment counsel for petitioner states that "it is evident" that the Circuit Court made no effort to determine whether or not the petitioner un-

derstood what constitutional safeguards he was waiving by entering a plea of guilty and was simply asked whether he was guilty or not guilty. And in his brief in opposition to respondent's motion to dismiss the petition counsel asserts more specifically that petitioner was not advised that by pleading guilty he would waive his privilege against self-incrimination, his right to trial by jury, and his right to confront witnesses against him.

No contention based expressly on *Boykin* was raised in the Circuit Court or in the Arkansas Supreme Court, and in its December 1972 memorandum the Court raised the question of whether State remedies have been exhausted as far as the *Boykin* argument is concerned. Counsel for petitioner says in connection with that question that petitioner now has no State remedy whereby he could raise a contention based on *Boykin*, and cites in that connection Criminal Procedure Rule 1(H) of the Arkansas Supreme Court which states that all grounds of relief available to a prisoner under the Rule must be raised in the original or an amended petition. And the Court notes that in his brief counsel for the respondent makes no present claim of lack of exhaustion. The Court concludes that State remedies have been exhausted, and that the questions raised by the petition itself and by the *Boykin* case are properly before it for decision.

It is clear that a plea of guilty is not invalid merely because it is a result of plea bargaining, provided that it is entered voluntarily and understandingly. North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. It is evident, however, that the requirements of Boykin v. Alabama are as applicable to a bargained plea as to one that is not bargained.

In that case a defendant in a State court charged with a capital crime entered a plea of guilty, and a jury was then empanelled to assess punishment as the State law provided. The record did not establish that the Judge who accepted the plea made any effort whatever to determine whether it was voluntarily and understandingly entered. There was an automatic appeal to the State Supreme Court which affirmed the judgment of the trial Court, and the case reached the Supreme Court on certiorari and the case was considered on the same record that had been made originally in the sentencing Court. That record was "silent" insofar as showing whether the guilty plea was entered intelligently and voluntarily and whether the defendant knew what he was waiving when he entered the plea. The record before this Court, including the record made up in the course of the Rule 1 proceeding, is far from silent in those areas.

It may be conceded that the Circuit Judge did not when he accepted the plea of guilty in September 1970 follow what may be called the "mechanics" of *Boykin*, as the Judge might have done well to follow. But, the record as a whole abundantly establishes that petitioner knew what he was charged with, that he knew the maximum punishment for both first degree murder and second degree murder, and that he knew that if he pleaded guilty he would not be tried to a jury. He was represented at all stages of the proceedings against him by capable counsel of his own choice, and he was kept abreast of developments in the plea bargaining process.

We do not have here a case of an indigent and ignorant defendant being summarily haled before a hostile court and induced on short notice to enter a bargained plea of guilty, perhaps without adequate counsel or without adequate opportunity to consult with counsel. Petitioner had a high school education. He was not without friends or family. Capable counsel was employed for him. He was not held in jail for weeks or months awaiting disposition of his case. He agreed to enter the plea while he was in the office of his attorney, and he

seems to have voluntarily gone to the courthouse by himself for the purpose of pleading guilty.

In the course of his testimony petitioner stated that he was so frightened by the proceedings that he did not know what he was doing when he entered his plea, and, in fact, he denied that he entered it, claiming that it was entered for him by his lawyer. The transcript of petitioner's September 9, 1970, arraignment makes it clear that petitioner was asked by the Judge whether he was guilty or not guilty, and he said that he was guilty. Thereafter, the Judge and the petitioner engaged in an intelligent colloquy about such matters as institutional good time and parole and about the necessity for petitioner to live as a law abiding citizen during that portion of sentence service of which was suspended.

It is probably true that petitioner was afraid when he was before the Circuit Court in the sense that he was nervous, but most people in his situation would be nervous at the prospect of receiving a substantial prison sentence, particularly since petitioner had been in prison before and knew what to expect. It is inconceivable to this Court that Mr. Street would have permitted his client to plead guilty, or that Judge Crumpler would have accepted the plea if there had been any indication that petitioner did not understand what he was doing.

On that point Judge Crumpler made a specific finding that petitioner was probably nervous but nothing more. As stated, there seems to be no question that petitioner shot and killed Olen Butler, and Judge Crumpler stated in effect that there was a factual basis for acceptance of the bargained plea. The Judge said:

"I can say that the plea was submitted to the Court for my acceptance or rejection and I went through the evidence. Mr. Graves pointed out, and had previously pointed out, there were elements of premeditation and deliberation. Also present were (sic) malice aforethought. Mr. Street was an employed attorney and a capable attorney. I have no reason ever to question his integrity, his ability or his honor. I also thought the plea and sentence were in accord with the facts. . . ."

In the course of the Rule 1 hearing petitioner's counsel suggested that it was unreasonable to believe that petitioner would knowingly and voluntarily enter a plea of guilty to second degree murder on the bargain of a 15-year sentence with three suspended when he had turned down an offer of a very short sentence in exchange for a plea of guilty to a charge of manslaughter. The Court thinks that counsel oversimplified. When the original offer was made, investigation of the case was incomplete, and, indeed, before petitioner was taken from the courtroom in May 1970 the Prosecuting Attorney had come into possession of additional information which suggested to him that petitioner perhaps should be charged with first degree murder. Thus, when the plea was finally bargained, the situation had changed radically from that which had existed when the original offer was made.

The petition will be dismissed. The Court wishes to thank Mr. Hodge for his services and will request Mr. Hodge to determine whether petitioner desires to appeal. If he does, Mr. Hodge should prepare and submit a notice of appeal and an application for a certificate of probable cause. Beyond that, Mr. Hodge will not be requested to go at this time.