**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leo RUBIER, Defendant-Appellant.**

### No. 80–1110.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 6, 1980.

Decided Feb. 19, 1981.

Rehearing and Rehearing En Banc Denied July 10, 1981.

---

Stewart P. Riley, Seattle, Wash., on briefs, for defendant-appellant.

J. Ron Sim, Asst. U. S. Atty., Seattle, Wash., on briefs, for plaintiff-appellee.

Before VAN DUSEN,* ANDERSON and BOOCHEVER, Circuit Judges.

PER CURIAM:

This appeal is from a February 15, 1980, judgment and commitment of defendant-appellant, imposing a 10-year sentence to be served consecutively to the Montana state sentence presently being served by him, with eligibility for parole under 18 U.S.C. § 4205(b)(2) at such time as the Parole Commission may determine. The jury found Leo Rubier guilty of (1) bank robbery and assault, putting in jeopardy the life of bank employees by the use of a gun, in violation of 18 U.S.C. § 2113(a) and (d); and (2) aiding and abetting such crimes, in violation of 18 U.S.C. § 2, on the basis that he had driven the "getaway" car (R.T. 27). We affirm.

The only evidence directly implicating Rubier was the testimony of Wayne Schrader (R.T. 21–34 & 41). On cross-examination of Schrader, defense counsel sought to show bias by revealing Schrader's immunity-for-testimony agreement with the Government (R.T. 54–62) and that Schrader was a heroin addict (R.T. 40–43). Defense counsel's questions, which were mostly lengthy statements, show that he was reading or paraphrasing the two writ-

* Honorable Francis L. Van Dusen, Senior United States Circuit Judge of the Third Circuit sitting by designation.

ten letters containing the agreement (R.T. 56–58, 60–62) and thus selectively putting parts of the agreement before the jury. The prosecutor's reaction to the immunity-for-testimony evidence was to seek admission of the two letters containing all the terms of the agreement (R.T. 62, 65). One letter, dated May 5, 1978 (P–6), was from Schrader's attorney to Prosecutor Sim and the other a return letter from the United States Attorney dated May 8, 1978 (P–5). Defense counsel raised a general objection to the admission of the letters, asserting that there was not "any basis for . . . [admitting the letters] under the rules of evidence," and arguing that Schrader had never seen or participated in writing either of the letters (R.T. 66).

The district court admitted the letters, holding that the Government was entitled to have all the terms of the agreement put on the record after the defense had brought up the subject of the immunity-for-testimony agreement with the witness (R.T. 66).[1]

■■■ We have concluded that there was no reversible error in admitting the letters into evidence for these reasons:

A. Facts of independent legal significance constituting a contract which is at issue are not hearsay. See *N. L. R. B. v. H. Koch & Sons*, 578 F.2d 1287, 1290–91 (9th Cir. 1978).

B. Since no specific objection was made to the admission of the letters on the ground that they supported a contention that the Government was motivating the witness Schrader to testify truthfully, the objecting party is precluded from asserting any such objection on appeal. *United States v. O'Brien*, 601 F.2d 1067, 1071 (9th Cir. 1979); *Allen v. Schneckloth*, 431 F.2d 635, 637 (9th Cir. 1970).

C. The letters in question contain the full terms of the immunity-for-testimony agreement and, hence, clarified and rebutted the defense cross-examination seeking to show bias of the witness Schrader. As such, they were relevant as tending to make the existence of the fact of bias less probable than it would be without the contents of the letters. Although the letter of May 5 from Schrader's attorney (P–6) states that Schrader will testify truthfully at Rubier's trial in return for the Government's agreement not to prosecute him for this robbery, the answering letter from the United States Attorney dated May 8, 1978 (P–5), makes no mention of any agreement to speak "truthfully," but only mentions that if he does not speak truthfully he will be subject to prosecution.[2]

The foregoing facts made clear that this record does not contain any implication that

---

1. In view of the dissenting opinion, we note that it was the defense which injected the immunity agreement into the case. The defense counsel in effect read to the jury the portions of the letters which favored the defense. *Cf.* R.T. 56–58, 60–62 *with* P–5, P–6. *See also* Fed.R. Evid. 106. In overruling defense counsel's objection to the admission of P–5 and P–6 into evidence, the trial judge stated at R.T. 67:

   "THE COURT: Well, to explain my reasons, I think where you have gone into the terms of the agreement with this witness, the Government is entitled to have spread on the record all of the terms of the agreement." Defense counsel did not limit his cross-examination to Schrader's understanding of what the terms of the agreement were. Counsel repeatedly asked if Schrader had "entered into [a] bargain," and asked, "the Government had promised to do several things for you. Correct?" R.T. 56. These questions refer to the actual agreement, which was the written letters. Schrader accepted this written agreement through his attorney and by his act of testifying.

2. These final two paragraphs of this letter make clear that the Government had not even interviewed Schrader prior to the writing of the May 8 letter and could not vouch in that letter for his testimony because it did not know what he would say:

   "Of course, the United States is interested only in the truth. No deception, whether it hurts the Government's case or not, will be tolerated. If it is established that Schrader has not been candid with the Government concerning the Lake Stevens robbery, this agreement will be considered to have been breached and he will be subject to prosecution.

   "By copy of this letter I am requesting that the FBI expeditiously arrange to have Schrader interviewed at Lompoc concerning this bank robbery. We can arrange a Grand Jury appearance as soon as I see the results of the interview. As the dates arise when any action that the Government has agreed to needs to be taken in order to have it considered with regard to Schrader's custody

"the prosecutor knows what the truth is and is assuring its revelation." See *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980). We conclude that the vouching principle of *United States v. Roberts*, 618 F.2d at 533, namely, that "[i]t is improper for the prosecution to vouch for the credibility of a government witness," is not applicable to this record.[3] Further, we note that *United States v. Roberts* pointed out the desirability of considering "an instruction to the jury [to] dispel any improper suggestions" in appropriate circumstances. *Id.* at 536. No request was made for such an instruction in this case apparently because, as noted above, the 1978 letters did not contain a vouching by the Government for the truthfulness of Schrader's testimony at the 1980 trial.[4]

The judgment of the district court will be affirmed.

BOOCHEVER, Circuit Judge, dissenting:

I respectfully dissent.

As indicated in the majority opinion the only evidence directly implicating Rubier in the robbery and assault was the testimony of Wayne Schrader. Without that testimony Rubier could not have been convicted. Thus Schrader's credibility was at the core of the government's case.

On cross examination Schrader testified to his understanding of the bargain, whereby the government agreed not to prosecute him for the robbery in exchange for his cooperation in the robbery investigation and his testimony against Rubier. To bolster Schrader's credibility the prosecution sought to admit into evidence letters from the prosecutor and Schrader's attorney setting forth the agreement those two attorneys had reached.

Schrader testified that he had never seen the agreement worked out between his attorney and the United States Attorney [TR 62]. When asked if his attorney had "fully laid down to you the details of the agreement that had been worked out," Schrader replied: "Well, more or less."

In its brief on appeal the government explains why it believes the letters were relevant, stating:

> If the matter had been left as it was at the end of cross-examination, the jury could have believed that Schrader had simply traded immunity for testimony against Rubier. It was important for the jury to understand that had Schrader's testimony been false, he would have lost his immunity.

In the absence of some testimony that Schrader had either read the letters or had all of their terms read or explained to him,

status, please contact me. I have no other way of knowing when he would need the help that the Government has promised to give him."

The jury could not reasonably have found from the contents of P–6 and P–5 that the Government was vouching for anything Schrader might say in a future interview.

3. The holding in *United States v. Roberts*, 618 F.2d 530, 532 (9th Cir. 1980), is inapplicable to this case since the reversal of the convictions in that case was based on "improper closing argument." Also, there is no contention here that vouching by the Government for the truthfulness of Schrader's testimony was mentioned in the arguments of counsel.

4. This is not a case such as *Roberts, supra*, where two participants in a crime testified in a wholly inconsistent way (618 F.2d at 533), since defendant did not take the stand here. At the trial, Schrader testified that defendant Rubier participated in the bank robbery by driving the getaway car. An F.B.I. agent testified (N.T. 152–68) that defendant told him, at an interview in January 1979, that he did not drive that car or participate in the robbery, but that in the two days before the robbery Schrader, McGee, and defendant drove to the bank which was later robbed and "Schrader went in the bank to cash a large denomination bill, ... the purpose being to case the bank for a robbery.... They then drove to a used car lot .... to try to find a getaway car for the bank robbery" (N.T. 155). Also, the agent testified: "When he [Rubier] told me these events [Schrader going into the bank and cashing a bill and essentially casing the bank, going with the others to the car lot, and McGee test driving the getaway car, N.T. 162–63], his indication was that at the time they occurred, he knew that is what was going on .... In telling me these events, he indicated to me he knew at the time they went to the bank that it was to case the bank ...." N.T. 163.

the fact that the letters embodied an agreement between the attorneys that the testimony be truthful was not relevant for the purpose of showing that Schrader so understood the agreement. Without testimony indicating that Schrader was aware of the portent of the letter agreement requiring truthfulness, the letters were inadmissible. Considered by themselves, letters between the attorneys have no tendency to make the assertion that Schrader, as opposed to his attorney, had agreed to testify truthfully or lose the benefit of prosecutorial immunity "more probable or less probable than it would be without the evidence."[1] An instrument purporting to have been executed by an attorney-in-fact or other agent is not admissible for any purpose absent proof of the agent's authority.[2] Such authentication is necessary to establish the relevancy of the document.[3] While a defendant's attorney may enter into negotiations with the district attorney pertaining to a plea bargain, no agreement which they reach can have any effect on the defendant until he or she has knowledge of the existence of its terms.[4]

In *Jones v. United States*, 423 F.2d 252, 255–56 (9th Cir.), *cert. denied*, 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970), we stated:

A guilty plea is not necessarily invalid because it rests upon a bargain with the prosecutor, [citation] but knowledge of the existence of such an agreement, its terms, and the negotiations which led to it, are crucial to the effective discharge of the court's responsibility to assure that the plea is not accepted unless it is voluntarily made .... Moreover, because of the prevalence of such agreements, the judge on his own initiative should explore, on the record, whether such an agreement exists, and, if so, its terms, how they were arrived at, the defendant's understanding of them, and their influence upon his decision to plead guilty. [footnote omitted.]

Rubier's trial counsel made an appropriate objection on the basis of Schrader's lack of familiarity with the communications.[5] The letters being irrelevant, it was error to admit them over counsel's objection.

The government does not argue that admission of the letters was harmless error. In fact, as indicated above, it considers it of importance for the jury to have understood that had Schrader's testimony been false, he would have lost his immunity.

In addition, I note that the letter from Schrader's attorney vouched for the truthfulness of Schrader's testimony by stating: "he will testify truthfully before the grand jury and at trial (if necessary) against Leo Rubiera, [sic]...." While not as flagrant as the circumstances involved in *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir.

1. Federal Rule of Evidence 401 states:
    "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2. *See Grey v. First National Bank in Dallas*, 393 F.2d 371, 386 (5th Cir.), *cert. denied*, 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968); *Cienki v. Rusnak*, 398 Ill. 77, 75 N.E.2d 372, 377 (1947) (letter written by seller's attorney to buyer's attorney releasing seller's interest in land was not admissible absent showing of attorney's authorization to execute a conveyance).

3. *Palfy v. Rice*, 473 P.2d 606, 612 (Alaska 1970); *see generally*, E. Cleary, McCormick on Evidence § 218, at 543–44 (2d ed. 1972).

4. *See Scott v. United States*, 419 F.2d 264, 274 (D.C.Cir.1969); *Bailey v. MacDougall*, 392 F.2d 155, 159 n.11 (4th Cir.), *cert. denied*, 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968); *Todd v. Lockhart*, 360 F.Supp. 950, 954 (E.D.Ark. 1973), *rev'd on other grounds*, 490 F.2d 626 (8th Cir. 1974); *Cooke v. Swope*, 28 F.Supp. 492, 493 (W.D.Wash.1939), *aff'd*, 109 F.2d 955 (9th Cir. 1940).

5. "MR. RILEY: Your Honor, I'm not sure there is any basis for doing it under the rules of evidence. That's my point. This particular witness, apparently, isn't familiar with this particular communication. He is certainly familiar with a lot of the contents and I think his testimony basically has been pretty consistent with—in fact, extremely consistent with the contents of the letters, but he didn't initial them or sign them or anything like that, and I just don't see that there's any basis under the rules for admitting them." [Tr. 66]

1980),[6] the use of a letter by a witness' attorney vouching for the truthfulness of testimony certainly affects substantial rights.[7] When the voucher by Schrader's attorney is coupled with the contents of the United States Attorney's letter stating that Schrader would be subject to prosecution if he did not testify truthfully "whether it hurts the government's case or not,"[8] I conclude that the erroneous introduction of the letters is reversible.

## MEMORANDUM SUR SUPPLEMENTAL PETITION FOR REHEARING AND RESPONSE TO THAT PETITION

PER CURIAM:

The belatedly filed transcript of the closing argument in this case, secured by defense counsel after filing of this court's Per Curiam Opinion, discloses that defense counsel concentrated his argument on attacking the testimony of the prosecution witness Schrader, who had been granted immunity.[1] In rebuttal, the prosecutor argued as follows at N.T. 37–38:

> "I want you to keep in mind when you look at the plea bargain letters in this case there is a personal letter from Ken

Kanev, who was the attorney for Wayne Schrader on the previous bank robbery case, to my boss, John Merkel, and then a response from me to Ken Kanev. The two letters explain exactly what the agreement of both parties was. Schrader isn't required to testify about a particular person, he is required to tell the truth, that's what he agrees to do, and it clearly specifies that if he doesn't tell the truth, he's going to be prosecuted.

> "The government isn't interested in anything except the truth. He doesn't have to say there's a getaway driver in the bank robbery, but if there was, he has to say so and he has to say who it is, and he has to tell truthfully because if it was really Steve Crockett and he says it's Leo Rubier and the government finds out about it, which they might, he doesn't know that they might not, what's going to happen to Wayne Schrader? He's going to get prosecuted for bank robbery, and the agreement clearly lets the government do that and obligates the government to do that. If there was no getaway driver, that agreement required him to say so and nothing else." [2]

---

6. The record submitted to us does not include the closing arguments. Without either the record or a reference to it in Rubier's brief, we can only assume that the prosecutor did not make use of the plea agreement in closing argument, in contrast to the situation in *Roberts*.

7. Federal Rule of Criminal Procedure 52(a) defines harmless error as:

> Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

8. *See* majority opinion, *supra*, note 1.

1. N.T. 18 ff., including the following:

> "With respect to Mr. Schrader, it is very difficult responding essentially to testimony that, quite frankly, comes straight out of the sewer. His testimony was essentially the testimony of the creator who used his testimony to buy his way out of serving another lengthy prison sentence. You heard the testimony regarding that sentence that Mr. McGhee received in this particular case, that's the type of sentence that Mr. Schrader was trying to avoid by fingering my client in this particular bank robbery.

> "Quite frankly, in my view, such testimony based on such a despicable motive is de-

meaning to this Court and our system of justice.

> "Mr. Schrader, in and of himself, is almost a national crime wave. He has got three prior felony convictions, one for strong-armed robbery, one for auto theft, one for the robbery of, I think, a bank down in Tacoma. He admitted his involvment in this particular case which he was never prosecuted for. God knows how many other robberies he's been convicted of."

N.T. 18–19.

2. The prosecution's argument continued:

> "Mr. Riley suggests that maybe Schrader is motivated by some thought of sheltering the real accomplice, and here we get the phantom, the phantom getaway driver is Steve Crockett because we all heard Steve Crockett's name several times during the trial. If it was Steve Crockett, tell me this, why didn't anybody mention it before this trial? Why not Schrader? Why not Carol Christie? Maybe you can answer or have an explanation for both of those.

> "I think Mr. Riley suggested some motivation why they might not want to mention Crockett even though I don't believe it's borne out by the evidence.

We note that counsel for defendant made no objection whatever to this rebuttal argument of the prosecutor at the time of the closing arguments to the jury and made no request for any curative instructions to the jury on the issue of alleged vouching. Furthermore, the issue of vouching was not raised in any argument presented to the panel in this case.

BOOCHEVER, Circuit Judge, dissenting:

I respectfully dissent.

As indicated in the majority opinion the only evidence directly implicating Rubier in the robbery and assault was the testimony of Wayne Schrader. Without that testimony Rubier could not have been convicted. Thus Schrader's credibility was at the core of the government's case.

On cross examination Schrader testified to his understanding of the bargain, whereby the government agreed not to prosecute him for the robbery in exchange for his cooperation in the robbery investigation and his testimony against Rubier. To bolster Schrader's credibility the prosecution sought to admit into evidence letters from the prosecutor and Schrader's attorney setting forth the agreement those two attorneys had reached.

Schrader testified that he had never seen the agreement worked out between his attorney and the United States Attorney. When asked if his attorney had "fully laid down to you the details of the agreement that had been worked out," Schrader replied: "Well, more or less."

In its brief on appeal the government explains why it believes the letters were relevant, stating:

> If the matter had been left as it was at the end of cross-examination, the jury could have believed that Schrader had simply traded immunity for testimony against Rubier. It was important for the jury to understand that had Schrader's testimony been false, he would have lost his immunity.

In the absence of some testimony that Schrader had either read the letters or had all of their terms read or explained to him, the fact that the letters embodied an agreement between the attorneys that the testimony be truthful was not relevant for the purpose of showing that Schrader so understood the agreement. Without testimony indicating that Schrader was aware of the portent of the letter agreement requiring truthfulness, the letters were inadmissible. Considered by themselves, letters between the attorneys have no tendency to make the assertion that Schrader, as opposed to his attorney, had agreed to testify truthfully or lose the benefit of prosecutorial immunity "more probable or less probable than it would be without the evidence." [1] An instrument purporting to have been executed by an attorney-in-fact or other agent is not admissible for any purpose absent proof of the agent's authority.[2] Such authentication is necessary to establish the relevancy of the document.[3] While a defendant's attorney may enter into negotiations with the

---

"But the real toughy is why not Rubier? When Rubier is talking to Agent Melson a year and a half ago telling him about the case, why does Rubier say well, Steve Crockett was at work. Do you know why? Because he was at work, and that is what Carol Christie said, Steve was working, and said wherever he was working, some company up in Everett, and that's why nobody has said until now that Steve Crockett was the getaway driver. He was at work, that's what the evidence is all about, and that's all there is to it."
N.T. 38–39.

**1.** Federal Rule of Evidence 401 states:
"Relevant evidence" means evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**2.** *See Grey v. First National Bank in Dallas*, 393 F.2d 371, 386 (5th Cir.), *cert. denied*, 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968); *Cienki v. Rusnak*, 398 Ill. 77, 75 N.E.2d 372, 377 (1947) (letter written by seller's attorney to buyer's attorney releasing seller's interest in land was not admissible absent showing of attorney's authorization to execute a conveyance).

**3.** *Palfy v. Rice*, 473 P.2d 606, 612 (Alaska 1970); *see generally*, E. Cleary, McCormick on Evidence § 218, at 543–44 (2d ed. 1972).

district attorney pertaining to a plea bargain, no agreement which they reach can have any effect on the defendant until he or she has knowledge of the existence of its terms.[4]

In *Jones v. United States*, 423 F.2d 252 at 255, 256 (9th Cir.), *cert. denied*, 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970), we stated:

> A guilty plea is not necessarily invalid because it rests upon a bargain with the prosecutor, [citation] but knowledge of the existence of such an agreement, its terms, and the negotiations which led to it, are crucial to the effective discharge of the court's responsibility to assure that the plea is not accepted unless it is voluntarily made.... Moreover, because of the prevalence of such agreements, the judge on his own initiative should explore, on the record, whether such an agreement exists, and, if so, its terms, how they were arrived at, the defendant's understanding of them, and their influence upon his decision to plead guilty. [footnote omitted]

Rubier's trial counsel made an appropriate objection on the basis of Schrader's lack of familiarity with the communications.[5] The letters being irrelevant, it was error to admit them over counsel's objection.

The government does not argue that admission of the letters was harmless error. In fact, as indicated above, it considers it of importance for the jury to have understood that had Schrader's testimony been false, he would have lost his immunity.

In addition, I note that the letter from Schrader's attorney vouched for the truthfulness of Schrader's testimony by stating:

"he will testify truthfully before the grand jury and at trial (if necessary) against Leo Rubiera, [sic]...." This is analogous to the circumstances involved in *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980), where the prosecution similarly vouched for the truthfulness of a witness' testimony. The record in this case has been supplemented with the transcription of the final arguments. As indicated in the portions of the prosecutor's argument quoted in the Memorandum for Supplemental Petition for Rehearing & Response to that Petition the government exacerbated the error in admitting the letters by using them to vouch for Schrader's credibility. As we stated in *Roberts*:

> A strong case can be made for excluding a plea agreement promise of truthfulness. The witness, who would otherwise seem untrustworthy, may appear to have been compelled by the prosecutor's threats and promises to come forward and be truthful. The suggestion is that the prosecutor is forcing the truth from his witness and the unspoken message is that the prosecutor knows what the truth is and is assuring its revelation.

> Conveying this message explicitly is improper vouching. *Lawn v. United States*, 355 U.S. 339, 359–60 n.15, 78 S.Ct. 311, 323 n.15, 2 L.Ed.2d 321 (1958), *Gradsky v. United States*, 373 F.2d 706, 710 (5th Cir. 1972) (improper to imply government checks for credibility before using witness). We conclude that conveying it by implication is equally improper.

> . . . .

> The prosecutor may not tell the jury that the government has confirmed a wit-

---

**4.** *See Scott v. United States*, 419 F.2d 264, 274 (D.C.Cir. 1969); *Bailey v. MacDougall*, 392 F.2d 155, 159 n.11 (4th Cir.) *cert. denied*, 393 U.S. 847, 89 S.Ct. 133, 21 L.Ed.2d 118 (1968); *Todd v. Lockhart*, 360 F.Supp. 950, 954 (E.D.Ark. 1973), *rev'd on other grounds*, 490 F.2d 626 (8th Cir. 1974); *Cooke v. Swope*, 28 F.Supp. 492, 493 (W.D.Wash.1939), *aff'd*, 109 F.2d 955 (9th Cir. 1940).

**5.** "MR. RILEY: Your Honor, I'm not sure there is any basis for doing it under the rules of

evidence. That's my point. This particular witness, apparently, isn't familiar with this particular communication. He is certainly familiar with a lot of the contents and I think his testimony basically has been pretty consistent with—in fact, extremely consistent with the contents of the letters, but he didn't initial them or sign them or anything like that, and I just don't see that there's any basis under the rules for admitting them." [Tr. 66]

ness's credibility before using him. *Gradsky v. United States, supra.* He should be no more able to indicate that the government has taken steps to compel the witness to be truthful. Both of these arguments involve improper vouching because they invite the jury to rely on the government's assessment that the witness is testifying truthfully. [citations omitted]

Since the letters were improperly admitted I find no reason to consider whether the use of them for "vouching" in the final argument need be recognized as plain error.

The use of a letter by a witness' attorney vouching for the truthfulness of testimony certainly affects substantial rights.[6] When the voucher by Schrader's attorney is coupled with the contents of the United States Attorney's letter stating that Schrader would be subject to prosecution if he did not testify truthfully "whether it hurts the government's case or not,"[7] and the use of the letters in final argument, I conclude that the erroneous introduction of the letters is reversible.

---

**6.** Federal Rule of Criminal Procedure 52(a) defines harmless error as:

 Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

**7.** *See* majority opinion, *supra*, note 1.